No. 80,991

STATE OF KANSAS, *Appellee*, v. RICARDO GOMEZ
MURILLO, *Appellant*.

(7 P.3d 264)

Opinion filed June 2, 2000.

*Rebecca E. Woodman*, assistant appellate defender, argued the cause, and *Elizabeth Seale Cateforis*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with her on the brief for appellant.

*Joe E. Lee*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Ricardo Gomez Murillo, from his convictions of premeditated first-degree murder, aggravated kidnapping, and three counts of aggravated assault, as well as discharging a firearm into an occupied dwelling. He received a hard 40 sentence for the first-degree murder conviction.

The victim was Delfino Moya. When we view the facts as we are required to view them, the following facts emerge.

Jose Moya, Delfino's brother, was at his house in Emporia, Kansas, along with his wife Theresa and their eight children on the night of April 3, 1997. Jose was not feeling well and was asleep in the living room. Between 9 and 9:20 p.m., Murillo kicked open the door to the house. Jose testified that he and Murillo were close friends and were constantly together. They worked construction jobs together, were remodeling a house together, were fishing companions, and would borrow each other's cars from time-to-time.

On this occasion, Murillo pointed a pistol at Jose and kept yelling that he wanted his "jale." While jale has a specific meaning, it can also refer to any type of personal property. There is evidence that it was used to refer to cocaine. Murillo pointed a pistol at Theresa and also at Theresa and Jose's 10-year-old daughter. It appeared Murillo was attempting to fire the gun. However, the gun was a single action pistol. This means that to fire the gun, the hammer must be manually cocked and then the trigger pulled. Simply pulling the trigger will not fire the gun. Jose recognized the gun as a .357 magnum belonging to Raul Aldrete, a friend of his and a cousin of Murillo's.

Murillo went out of the house and began pacing back and forth on the porch. After 5 to 10 minutes he called Jose and asked him

to come out. When Jose went to the door, Murillo tried to persuade Jose to take him to Delfino's house.

Jose was wary of taking Murillo to Delfino's house and told Murillo to put the gun away. Murillo then suddenly stated, "You know what I want," and cocked the gun. Jose slammed the door shut and Murillo tried to kick the door in. Murillo then fired a shot through the window of the door. Finally, Murillo drove away in a truck which Jose recognized as also belonging to Raul.

Jose and his family drove to Raul's house. Jose stated that he wanted to get a gun to protect his family and also to find out why Murillo was acting in such a manner. However, Raul was not home. Jose then talked to the police and asked them to check on Delfino. Eventually, he learned that Delfino was not at home and had left with Murillo. Jose testified that he knew Delfino would never have voluntarily left with Murillo. According to Jose, he feared that Murillo had killed Delfino and dumped his body into the river. Murillo had previously told Jose that if he ever had a problem and had to "take care of" someone, he would throw the body in the river so that it would not be found.

Leslie Moya, Delfino's wife, stated that Murillo came to their house on April 3 between 9 and 9:20 p.m. Murillo seemed paranoid and had one hand in his pocket. According to Leslie, Murillo kept talking about his "jale," which she understood to be cocaine. Delfino tried to calm down Murillo. Finally, Delfino told Murillo to wait. Delfino put on his socks, shoes, and a shirt and went outside. Leslie then heard Murillo talking loudly and two vehicle doors shut. She looked out the window and saw Murillo drive off in a pickup with Delfino. Delfino had left behind his keys, wallet, and cigarettes.

Stacey Parks, a resident who lived near the field in which Delfino's body was found, testified that she heard gunshots between 9:30 and 10 p.m.

Raul confirmed that Murillo had borrowed his truck on April 3. He stated that he was asleep on his sofa at about 8:30 p.m. when Murillo came by. He loaned the truck to Murillo and then fell back asleep. Around midnight, Raul noticed that his truck had been

returned. Later, when police searched his home, Raul discovered that one of his guns and ammunition were missing.

Miguel Aldrete, another cousin of Murillo, testified that Murillo came to his home in Dodge City, Kansas, at approximately 3 a.m. on April 4. Murillo told him that he had shot at "Moyas." Murillo gave Miguel the gun he had used, which was later turned over to police. Miguel drove Murillo to the train station in Garden City, Kansas, so that Murillo could take a train to Los Angeles.

Murillo was apprehended by police when his train stopped at Albuquerque, New Mexico. When interrogated by officers, Murillo told them that he had been taking cocaine all day on April 3 and was having hallucinations. Murillo admitted stealing Raul's gun because he was hearing voices which were warning him that he was in danger. Murillo stated that after borrowing Raul's truck, the next thing he remembered was taking the truck back to Raul's to pick up his car. He testified that the voices told him to go to Dodge City. However, Murillo said that he remembered shooting at Jose's house and thought that he was being arrested for that offense. He stated that he had not talked to Delfino for at least a week.

On April 4, Delfino's body was found in a field. He had been shot four or five times. The body was found at a location some 5 to 10 minutes away from Delfino's home. One bullet wound could have been a re-entry after it had exited another portion of Delfino's body. Cocaine was found in Delfino's body which was consistent with being consumed prior to 9:30 p.m. on April 3.

Murillo's clothing and the pistol were located in Dodge City. Murillo told Miguel that he had fired one shot into Jose's house and later that he had shot Delfino four times.

Prior to sentencing, the State filed a notice of intent to seek the hard 40 sentence. The notice listed as aggravating factors: (1) The defendant was previously convicted of a felony in which the defendant inflicted great bodily harm, disfigurement, dismemberment, or death on another; (2) the defendant committed the crime for the defendant's self or another for the purpose of receiving money or any other thing of monetary value; and (3) the defendant committed the crime in an especially heinous, atrocious, and cruel manner.

The trial court found that the murder was not committed in an especially heinous, atrocious, and cruel manner. The trial court did find that Murillo had committed an armed robbery and aggravated assault in the state of Illinois in which a pipe was used to beat the victim about the head, face, and chest. While the evidence was not strong, there was some evidence that Murillo had taken something of value from the victim, *i.e.*, cocaine.

Murillo first contends that the evidence was insufficient to prove that he was guilty of the aggravated kidnapping of Delfino. He argues that the evidence merely shows that Delfino left with him voluntarily.

Where the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998).

In this case, in order to prove aggravated kidnapping, the State had to prove that Murillo "took or confined Delfino Moya by force" with the "intent to hold such person to inflict bodily injury, to terrorize the victim, or to facilitate the commission of a crime," and that "bodily harm was inflicted upon Delfino Moya." Murillo's argument is that the only evidence shows Delfino left voluntarily with him. He argues that the facts in this case are similar to those in *State v. Patterson*, 243 Kan. 262, 755 P.2d 551 (1988), wherein this court found insufficient evidence for an aggravated kidnapping conviction. However, the facts are not as close as Murillo asserts. In *Patterson*, the victim voluntarily got into a car with two men and engaged in consensual sex with one of them, whereupon the other killed her. This court found insufficient evidence to show that the victim had been confined against her will. 243 Kan. at 264-65.

Contrary to Murillo's argument, while the evidence establishes that Delfino voluntarily went outside with Murillo, it does not show that Delfino voluntarily left in the truck with Murillo. Rather, the evidence shows quite the opposite. At the time Delfino went outside on the night of April 3, he was wearing only sleeping shorts, a t-shirt, and shoes. He left behind his cigarettes, keys, and wallet.

These actions demonstrate that Delfino was not planning on leaving for any length of time. Further, Jose testified that he knew Delfino would never voluntarily leave with Murillo. This, combined with the prior evidence of Murillo's actions in trying to get Jose to go with him to Delfino's house and shooting at Jose when he refused, supports the inference that Delfino did not go willingly with Murillo.

It is true that the evidence supporting the aggravated kidnapping offense is circumstantial. However, even the gravest of offenses may be established by circumstantial evidence. *State v. Reed*, 256 Kan. 547, 566, 886 P.2d 854 (1994). The evidence, when viewed in a light most favorable to the prosecution, could convince a rational factfinder to find Murillo guilty of aggravated kidnapping beyond a reasonable doubt.

Murillo next contends that the evidence was insufficient to show premeditation. As a result, he argues that his conviction for first-degree murder should be reversed.

In *State v. Cravatt*, 267 Kan. 314, 328-29, 979 P.2d 679 (1999), this court stated:

"The evidence of premeditation need not be direct and often is established by circumstantial evidence. A conviction of even the gravest offense may be sustained by circumstantial evidence. [Citation omitted.] Premeditation cannot be inferred from the use of a deadly weapon alone; it may be inferred where other circumstances also exist. [Citation omitted.] Circumstances which may give rise to the inference of premeditation include: (1) the nature of the weapon used; (2) lack of provocation; (3) the defendant's conduct before and after the killing; (4) threats and declarations of the defendant before and during the occurrence; and (5) the dealing of lethal blows after the deceased was felled and rendered helpless. [Citation omitted.]

. . . .

". . . The jury has a right to infer premeditation from the established circumstances of the case provided the inference is a reasonable one."

In the case at hand, the weapon used was a deadly one. More specifically, it was a single action revolver which had to be cocked before each round was fired. The evidence shows that Delfino was shot at least four times. In addition, while many of the wounds were on the front of Delfino, one was behind the ear and another in the back of the thigh, indicating that Delfino might have been

felled and rendered helpless when the lethal blows were delivered. Further, the actions of Murillo in stealing the gun and his statements to Jose regarding a visit to Delfino, as well as Murillo's shooting at Jose when Jose refused to take him to Delfino's house, support the inference that Murillo had ill designs toward Delfino. Under the circumstances, the evidence was sufficient for a rational factfinder to conclude that the killing of Delfino was premeditated. Such an inference was reasonable from the evidence, and the jury had the right to make it. *Cravatt*, 267 Kan. at 329.

Murillo also argues that the trial court erred in imposing the hard 40 sentence for his first-degree murder conviction. He contends that the two bases on which the trial court imposed the sentence were not proven.

K.S.A. 21-4635 provides that if a defendant is convicted of first-degree premeditated murder, the court shall determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years. In order to make such a determination, the sentencing judge considers certain statutorily defined aggravating circumstances, as well as mitigating circumstances. See K.S.A. 21-4636; K.S.A. 21-4637. If the court finds that one or more of the aggravating circumstances exist and its existence is not outweighed by any mitigating circumstances that exist, the court shall impose the hard 40 sentence. K.S.A. 21-4635(c).

In the case at bar, the court found two statutorily defined aggravating circumstances: Murillo was previously convicted of a felony in which he inflicted great bodily harm, disfigurement, dismemberment, or death on another; Murillo also committed the crime for himself or another for the purpose of receiving money or any other thing of monetary value. See K.S.A. 21-4636(a) and (c). The question, therefore, is whether the State proved the existence of these two aggravating factors. Where the sufficiency of the evidence is challenged for establishing the existence of an aggravating circumstance in a hard 40 sentencing proceeding, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, a rational factfinder could have found the existence of the aggravating cir-

cumstance by a preponderance of the evidence. *State v. Vontress,* 266 Kan. 248, 258, 970 P.2d 42 (1998).

The first aggravating circumstance found by the court was that Murillo had previously been convicted of a felony in which he inflicted great bodily harm, disfigurement, dismemberment, or death on another. In order to support this circumstance, the State introduced an order from Illinois which showed that Murillo had been convicted of aggravated battery, as well as a copy of the grand jury indictment from that case that indicated that Murillo had been indicted for committing great bodily harm on the victim.

State's exhibit 6 is an Order of Sentence and Commitment to Illinois Department of Corrections. It shows that Murillo was sentenced to 7 years following a plea of guilty on aggravated battery in case No. 90CR8459. It appears that there is some marking in the space for name and address of Murillo's counsel, but it is illegible on the copy in the record. State's exhibit 11 is a copy of the grand jury indictment in case No. 90CR8459, which alleges that Murillo caused great bodily harm to a person by striking him with a metal pipe. Exhibit 6 also states that the aggravated battery to which Murillo pled guilty was proscribed by Ill. Rev. Stat. ch. 38, § 12, para. 4A, which is the same section referenced in the indictment, exhibit 11.

It should be noted that, contrary to Murillo's allegation, the State's burden in this case is only by a preponderance of the evidence rather than beyond a reasonable doubt. See *Vontress,* 266 Kan. at 258; *State v. Spain,* 263 Kan. 708, Syl. ¶ 6, 953 P.2d 1004 (1998). Under this standard, the evidence produced by the State is sufficient to prove the existence of the aggravating factor. Taken together, exhibits 6 and 11 show that Murillo pled guilty to the offense for which he was indicted and that this offense resulted in great bodily harm. Murillo put forth no evidence to counter the State's evidence and has made no affirmative allegation that his plea was anything but voluntary. As a result, this aggravating circumstance is proven.

The other aggravating circumstance found by the court is that Murillo committed the crime for himself or another for the purpose of receiving money or any other thing of monetary value. The

State argued that there was evidence Murillo was looking for cocaine when he committed the murder.

K.S.A. 21-4636(c) lists as an aggravating factor: "The defendant committed the crime for the defendant's self or another for the purpose of receiving money or any other thing of monetary value." In *Vontress*, we found that this circumstance existed where Vontress committed the murder in the course of an aggravated robbery to steal money or drugs. 266 Kan. at 259. Similarly, in *State v. Cromwell*, 253 Kan. 495, 513, 856 P.2d 1299 (1993), we found the circumstance existed when the defendant committed the murder during a rape and a robbery and stole money and checks. In *Cromwell*, we discussed the purpose of this aggravating circumstance:

"The legislature has said that it is particularly egregious to take the life of another to obtain property . . . . The legislature has allowed courts and juries to impose particularly hard sentences for such conduct. The language of the statute is not expressly limited to cases involving murder for hire . . . ." 253 Kan. at 513.

In the case at bar, the evidence is somewhat sparse. It is clear that Murillo committed the murder of Delfino while in the process of attempting to locate his "jale." Leslie testified that she understood Murillo to be referring to his cocaine. There was evidence that Delfino had been taking cocaine earlier on the day of the murder and that Murillo had also been taking large amounts of cocaine. Under these circumstances, the evidence, although not overwhelming, is sufficient to establish the aggravating factor by a preponderance of the evidence.

Further, even if this court were to find the evidence as to this aggravating factor insufficient, this does not mean that Murillo's sentence must be vacated. This court has found that the existence of one aggravating circumstance may alone be sufficient to support the hard 40 where the mitigating circumstances are so weak that the one aggravating circumstance clearly outweighs them. See *Reed*, 256 Kan. at 563. In the case at bar, the only mitigating circumstance suggested by Murillo was that he was under extreme mental or emotional disturbance and lacked the capacity to appreciate the criminality of his conduct. The only evidence of this disturbance was that Murillo was under the influence of crack cocaine.

While the trial court stated that it considered this testimony in its ruling, it is clear that the aggravating factor would be sufficient to outweigh this mitigating factor. See *Reed*, 256 Kan. at 564; *State v. Bailey*, 251 Kan. 156, 178, 834 P.2d 342 (1992).

Under the circumstances, the trial court did not err in imposing the hard 40.

Affirmed.

ALLEGRUCCI, J., concurs in the result.