(44 P.3d 1283)

No. 86,103

STATE OF KANSAS, *Appellee*, v. MARVIN K. ROBERTSON, *Appellant*.

Opinion filed May 3, 2002.

*Autumn L. Fox*, of The Law Office of Autumn L. Fox, for appellant.

*Jeffery V. Rowe*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., GREEN and JOHNSON, JJ.

GREEN, J.: Marvin K. Robertson appeals his convictions of theft, possession of drug paraphernalia, and burglary. On appeal, Robertson argues (1) that the trial court erred in denying his attorney's motion to withdraw and (2) that the evidence was insufficient to support his theft conviction. We affirm in part, reverse in part, and remand for a new trial.

Robertson was charged with two counts of theft and single counts of burglary and possession of drug paraphernalia after he was suspected of breaking into a construction site and stealing several items. Several months before trial, Robertson filed a disciplinary complaint against his attorney. Shortly thereafter, Robertson's attorney moved to withdraw from the case at Robertson's request. His attorney claimed that the disciplinary complaint created a conflict of interest that required her to withdraw from the case. Robertson's attorney also told the court that there was a "total breakdown in communication." The trial court denied the defense motion to withdraw.

Robertson's case proceeded to trial, where he was convicted by a jury of one count of theft and one count of possession of drug paraphernalia. The jury was undecided on the burglary charge. Robertson later pled guilty to burglary. Robertson was sentenced to 15 months' imprisonment.

On appeal, Robertson argues that the trial court's denial of his court-appointed attorney's motion to withdraw violated his right to effective assistance of counsel. The State argues that Robertson is raising the claim of ineffective assistance of counsel for the first time on appeal. An allegation of ineffective assistance of counsel will not be considered for the first time on appeal. *State v. Van Cleave*, 239 Kan. 117, Syl. ¶ 1, 716 P.2d 580 (1986).

A trial court is required to grant a motion to withdraw upon a showing of irreconcilable conflict between a defendant and his or her attorney. Failure to grant a motion to withdraw after the defendant has shown irreconcilable conflict could result in the denial of effective assistance of counsel. *State v. Ferguson*, 254 Kan. 62, Syl. ¶ 2, 864 P.2d 693 (1993). Because the trial court denied Robertson's motion to withdraw which was based on a potential conflict

of interest, the issue of ineffective assistance of counsel is not being raised for the first time on appeal.

Robertson claims that the trial court should have granted the motion to withdraw because his pending disciplinary complaint against trial counsel created a per se conflict of interest that required the court to allow his attorney to withdraw. Robertson argues that the trial court's failure to grant the motion to withdraw requires us to reverse his convictions or allow him to withdraw his guilty plea. However, because Robertson did not file a motion to withdraw his guilty plea, we are without jurisdiction to disturb the burglary conviction. See K.S.A. 2001 Supp. 22-3602(a).

On appeal, our scope of review is limited to whether the trial court abused its discretion in denying the motion to withdraw. *Ferguson*, 254 Kan. at 69. "A trial court abuses its discretion if it fails to inquire further after becoming aware of a potential conflict between an attorney and a client. *State v. Taylor*, 266 Kan. 967, 978, 975 P.2d 1196 (1999)." *State v. Bowen*, 27 Kan. App. 2d 122, 127-28, 999 P.2d 286 (2000).

Although Robertson argues that the trial court erred in refusing to allow his attorney to withdraw because the pending disciplinary complaint created a per se conflict of interest, Kansas has not recognized a per se conflict of interest with regard to the attorney-client relationship. Instead, our Supreme Court requires an actual conflict of interest before prejudice will be presumed. The court noted this position in *State v. Jenkins*, 257 Kan. 1074, 1083-84, 898 P.2d 1121 (1995):

"[W]here the trial court is advised of the possibility of a conflict by either the defendant or the State, the court is required to initiate an inquiry to insure that the defendant's Sixth Amendment right to counsel is not violated. In this instance, a showing that there is an *actual conflict of interest* will result in automatic reversal. [Citation omitted.] Prejudice to the defendant is presumed, and reversal of the defendant's conviction is automatic." (Emphasis added.)

Accord *Bowen*, 27 Kan. App. 2d at 130.

Because *Jenkins* requires an actual conflict of interest in the attorney-client relationship, we refuse to adopt Robertson's argument that a pending disciplinary complaint creates a per se conflict of interest. As such, Robertson must establish that his pending

disciplinary complaint against his trial counsel created an actual conflict of interest.

Requiring an actual conflict of interest is consistent with several other jurisdictions that have found that a disciplinary complaint or civil lawsuit filed by a defendant against his or her attorney does not create a per se conflict of interest. See, *e.g., Carter v. Armontrout*, 929 F.2d 1294, 1300 (8th Cir. 1991) (holding that a pending lawsuit between a defendant and his or her attorney may create a conflict of interest but the defendant does not necessarily create such a conflict merely by filing the lawsuit); *Douglas v. United States*, 488 A.2d 121, 136-37 (D.C. 1985) (finding that a disciplinary complaint is not an automatic basis for declaring a mistrial); *People v. Johnson*, 227 Ill. App. 3d 800, 813-14, 592 N.E.2d 345 (1992) (noting that the trial court need not honor a request for new counsel merely because the defendant filed a disciplinary complaint); *State v. Boyd*, 913 S.W.2d 838, 844 (Mo. App. 1995) (noting that although a pending lawsuit between a defendant and his or her attorney may give rise to a conflict of interest requiring appointment of new counsel, a defendant does not necessarily create such a conflict by filing a lawsuit).

We must next determine whether a pending disciplinary complaint could create an actual conflict of interest and, if so, under what circumstances. Because this is an issue of first impression in Kansas, an examination of approaches used by other jurisdictions is insightful.

Some cases addressing this issue have found that a pending disciplinary complaint does not create a conflict of interest. For example, in *State v. Reddick*, 230 Neb. 218, 430 N.W.2d 542 (1988), the defendant argued that his complaints against his court-appointed attorneys created a conflict of interest that deprived him of effective assistance of counsel. The *Reddick* court rejected this argument, noting that the defendant's complaints against his attorneys were not "inherently conducive to divided loyalties" because the attorneys' best defense against the defendant's allegations was to provide him with the best possible defense. 230 Neb. at 222. Because the defendant's and the attorneys' interests were in har-

mony, the *Reddick* court found that the disciplinary complaint did not create a conflict of interest. 230 Neb. at 222-23.

Similarly, in *State v. Sinclair*, 46 Wash. App. 433, 730 P.2d 742 (1986), the court held that the defendant's disciplinary complaint against his appointed counsel did not give rise to a conflict of interest so as to require her disqualification. The court rationalized that if the filing of a disciplinary complaint against trial counsel was sufficient to disqualify court-appointed counsel, "a defendant could force the appointment of a new attorney simply by filing such a complaint, regardless of merit." 46 Wash. App. at 437.

Although *Reddick* and *Sinclair* seem to suggest that a pending disciplinary complaint would never give rise to a conflict of interest, other jurisdictions have found that a pending disciplinary complaint or civil lawsuit may create a conflict of interest, depending on the nature of the complaint or lawsuit. For example, the court in *People v. Massa*, 271 Ill. App. 3d 75, 648 N.E.2d 123 (1995), noted that although a civil lawsuit filed by a defendant against his or her trial counsel may give rise to a conflict of interest requiring appointment of new counsel, a defendant who files such a lawsuit against his or her attorney does not necessarily create such a conflict. The *Massa* court rationalized that the trial court must consider the nature and gravamen of the defendant's civil lawsuit filed against his attorney to determine whether the action creates the kind of conflict that requires the court to appoint new counsel for the defendant. The *Massa* court found that the defendant's civil lawsuit against his attorney did not constitute an actual conflict because the basis of the lawsuit had been resolved. 271 Ill. App. 3d at 82-83; see *Boyd*, 913 S.W.2d at 845-46 (considering the nature of the defendant's disciplinary complaint in finding that an actual conflict of interest did not exist).

The nature of a defendant's complaint against his attorney was also considered in *Mathis v. Hood*, 937 F.2d 790 (2d Cir. 1991), in determining whether an actual conflict of interest existed. The defendant's disciplinary complaint against his appellate counsel was based on the attorney's dilatory conduct in prosecuting his appeal which resulted in a 6-year delay in hearing the appeal and possible liability of the attorney for the delay. The *Mathis* court found that

this created an actual conflict of interest sufficient to undermine confidence in the outcome of the state appeal. 937 F.2d at 796.

We recognize that an attorney's best defense to a disciplinary complaint is to provide the defendant with the best possible defense and, as such, a pending disciplinary complaint does not necessarily create a conflict of interest. However, we also recognize that under certain circumstances, a disciplinary complaint could create an actual conflict of interest, depending on the nature of the complaint. As a result, we find that a pending disciplinary complaint filed by a criminal defendant against his or her court-appointed attorney may create an actual conflict of interest depending on the nature of the complaint. Accordingly, the pending disciplinary complaint filed by Robertson against his attorney may have created an actual conflict of interest, depending on the nature of the complaint.

Unfortunately, the trial court failed to inquire into the basis of the disciplinary complaint. To illustrate, the following exchanges occurred on November 19, 1999, during the hearing on the motion to withdraw:

"MS. McLEMORE [Defense counsel]: . . . . At request of Mr. Robertson, I filed a motion to withdraw. It has also come to my attention Mr. Robertson has filed a complaint against me with the Disciplinary Board. I think there is a conflict at this point.

"THE COURT: The problem with that in and of itself, if the filing of the complaint with the disciplinary administrator would cause an attorney to have been removed from the case, then that will spread like wildfire through the jail. They'll say if you don't like your lawyer, all you have to do is file a complaint against him [with the disciplinary administrator], and then you automatically get to change lawyers. Guess how many lawyers are going to have complaints filed against them next week. It needs to be something more tha[n] that."

Significantly, the trial court focused on a perceived problem of defendants filing frivolous disciplinary complaints against their attorneys merely to obtain substitute counsel, rather than inquiring into the nature of Robertson's disciplinary complaint. Apparently, realizing that the disciplinary complaint was a losing argument with the trial court, defense counsel informed the court that another conflict existed involving a "total breakdown in communication"

with Robertson. Specifically, McLemore stated that she had "not been able to communicate with Mr. Robertson effectively."

Robertson confirmed and attempted to explain the nature of the communication breakdown between himself and his attorney:

"I think Miss McLemore is good counsel. *However, as she said, I think communication has broken down somewhere,* but I don't think that should be between me and her. I think that to be between her and whoever she negotiated plea negotiations with. It has affected me.

"*Me and Miss McLemore have not had communication.* So communication is impossible to break down when you don't have it. *I have not had communication with Miss McLemore since October the 15th, 1999.*" (Emphasis added.)

Robertson then explained to the trial court the problem with plea negotiations:

"On a case which I pled guilty on, guilty as charged, I [pled] guilty as charged on for a reason. *The reason was not because I was guilty.* The reason was because I accepted a plea bargain in exchange for plea negotiations. Other charges would be considered to be dropped.

"I didn't negotiate that plea. That's why I said obviously plea negotiations has broke down between Miss McLemore and whoever she negotiated plea negotiations with. I didn't negotiate. That's why I made that statement." (Emphasis added.)

We interpret Robertson's statement as informing the trial court that he pled guilty to charges in a prior case even though he may not have been guilty, so that the charges would be dropped in another case, possibly the current case. Rather than investigating this allegation, the trial court responded as follows:

"THE COURT: I don't know that any defendant negotiates his plea bargain directly with the District Attorney unless he doesn't have an attorney. . . . Your attorney is one that has to do that.

"MR. ROBERTSON: You're absolutely correct. That was the purpose of me having an attorney. However, if I was going to plead guilty as charged, I did not need an attorney to do that.

"THE COURT: Well, this is a whole other issue. I'm going to find there's no grounds for withdrawal of counsel. I suppose [the] best argument I heard so far [is the] fact that [a] disciplinary complaint has been filed, but as I say, I think this would be important for the Appellate Court to straighten out. . . .

". . . I don't think that the filing of the complaint can be sufficient to require the replacement of counsel. There has to be a factual basis behind it."

After the trial court denied the motion to withdraw, Robertson addressed the court again:

"THE DEFENDANT: May I speak again?

"THE COURT: Yes. .

"THE DEFENDANT: I wrote you a letter. I think last month. I explained some of this to you in the letter. I don't know whether you received it or not.

"THE COURT: I received those, but ordinarily I won't look at them because I think counsel needs to be involved in discussing these if we're going to.

"MR. ROBERTSON: Everything I mentioned in the letter was on record. I put the date which everything occurred. However, I'm saying that because in that letter, I'm saying now, this whole matter could be cleared up if we could get back to negotiating plea negotiations which were similar and consistent to the original plea which I thought was being negotiated.

"I think this whole thing could be cleared up without further litigation and possibly without jury trial and possibly save some people some time and money.

"THE COURT: I presume, Miss McLemore, you're interested in continuing to discuss with the District Attorney any plea they may be willing to offer, is that correct?

"MS. McLEMORE: I'm willing to do whatever is necessary in this case. Whatever needs to be done. Needs to go to jury trial, I'm ready to do that. If he wants to negotiate a plea, I'm ready to do that. Whatever the Court wants me to do on this case, as far as representing him, I'm ready to do that, too.

"THE COURT: Why don't you renegotiate again with the District Attorney's office and get whatever offer they're willing to make, get that information back to your client."

By refusing to consider Robertson's letter and failing to inquire as to the nature of the disciplinary complaint, the trial court ignored a potential conflict of interest. Nevertheless, this potential conflict of interest apparently concerned McLemore's supervisor, who tried to focus the trial court's attention on the pending disciplinary complaint:

"MR. NEY: If I might, Richard Ney, for the record. I'm Miss McLemore's supervisor. We have a *dilemma* here. I just want to put on the record so the Court is aware, Miss McLemore has been asked to respond to the allegations of Mr. Robertson to the disciplinary committee. We discussed that, we talked about that.

*"That response is going to be adversarial, going to be contrary to Mr. Robertson's position about this case.* I just want to make it clear that Miss McLemore has that duty to respond. At the same time, she has the duty to represent him.

*"So we're clear for the record, she is going to respond as required by the disciplinary committee, in the same breath, that will be contrary to the position her client is taking about this case and the effect of the previous case on him.*

"THE COURT: I understand. Certainly she would be expected to defend herself on those allegations, but a jury is not going to be aware of this. So they're not going to be poisoned there's some kind of dispute between the lawyer and the client in this case.

"You understand my predicament. You really think that if I allowed just the mere filing of an allegation with the disciplinary administrator being sufficient to replace counsel, how would you suggest I do my job. Let's them replace them as much as they want to.

"MR. NEY: I'm not trying to second-guess the Court. I'm just trying to put on the record the *horns of the dilemma*. At the same time to another body *disputing the very position he's making about this case*.

"THE COURT: I won't be aware it will be a confidential proceeding up there. Unless formal hearing is ordered, in which case probably this case will long since be over at the time there's been any formal disciplinary hearings that would be open to the public. Other than that, I wouldn't have any knowledge what they're doing. I'm sure no juror would have any knowledge what's going on [with the disciplinary complaint]. I don't know that it would prejudice the case down here." (Emphasis added.)

In pointing out that Robertson would not be prejudiced because the court and the jury would not know of the disciplinary proceeding, the trial court failed to consider the nature and gravamen of Robertson's disciplinary complaint filed against his attorney to determine whether the disciplinary complaint created an actual conflict of interest.

A similar issue was addressed in *State v. Taylor*, 266 Kan. 967, 975 P.2d 1196 (1999). The defendant in *Taylor* moved for a continuance so that he could secure new counsel. The trial court did not inquire as to the reasons for the defendant's request for time to secure alternate counsel and overruled the request, stating that the defendant could represent himself if he wanted to. Although the trial court did not ask about the defendant's representation, the defendant took the opportunity, offered after his continuance request and his motion to withdraw his plea were denied, to address the court. He made lengthy complaints about his representation and stated that he was rushed into a decision to accept the plea. Primarily, Taylor complained that he took the plea because he concluded that his attorney was unwilling or unprepared to try his case. The *Taylor* court found that the lack of a meaningful hearing on the defendant's motion to withdraw his guilty plea was

an abuse of discretion. *Taylor* noted that "[t]he district judge failed to make any inquiry as to the problems between [the defendant] and [his attorney]. Were they imagined or real? The record contains no inquiry from the bench regarding the adequacy of [the defendant]'s representation." 266 Kan. at 975; see *Bowen*, 27 Kan. App. 2d at 129-30 (finding that the trial court's inquiry into a potential attorney-client conflict of interest was inadequate to ensure that the defendant received a fair trial).

Here, the trial court similarly failed to meaningfully inquire into the alleged conflict of interest with defense counsel when it failed to determine the nature of the disciplinary complaint. Although the exact nature of the disciplinary complaint is not known, we can infer from the record that it was serious and likely involved the problem regarding plea negotiations. The seriousness of the disciplinary complaint is evidenced by Ney's comments to the trial court. Ney informed the trial court that McLemore's response to the disciplinary complaint would be contrary to Robertson's position in both the current and former case. Despite being informed that McLemore would be taking an adversarial position against Robertson, the trial court did not inquire into the nature of the allegations in order to determine whether an actual conflict of interest was created. Moreover, the trial court failed to ask Robertson and his attorney whether the disciplinary complaint was the crux of their breakdown in communication.

Under *Jenkins*, the trial court was required to initiate an inquiry into the nature of the conflict. As noted previously, *Jenkins* held that "where the trial court is advised of the possibility of a conflict by either the defendant or the State, the court is required to initiate an inquiry to insure that the defendant's Sixth Amendment right to counsel is not violated." 257 Kan. at 1084. The trial court was required to inquire into the nature of the conflict because it had "an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." 257 Kan. at 1084; see *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973) (holding that it is a violation of the Sixth Amendment if the trial court refuses to inquire into a substantial complaint when there is no reason to suspect the bona fides of the defendant).

The trial court was put on notice that Robertson may have been represented by conflicting interests. Ney told the trial court that the disciplinary complaint placed McLemore in an adversarial position with Robertson. In addition, both Robertson and his attorney confirmed that communication had broken down between them. Despite this, the trial court failed to ascertain the nature of the disciplinary complaint in order to determine whether an actual conflict of interest existed requiring the appointment of substitute counsel. As a result, we find that the trial court did not make an inquiry sufficient to ensure a fair trial. See *Bowen*, 27 Kan. App. 2d at 131.

Because the trial court failed to adequately inquire into the potential conflict of interest created by the disciplinary complaint, the next question is whether an actual conflict of interest existed. See *Jenkins*, 257 Kan. at 1083-84; *Bowen*, 27 Kan. App. 2d at 130. Where an attorney owes a duty to a criminal defendant while at the same time is required to respond to a disciplinary complaint filed by that client and which response will be contrary to the defendant's position in the current case; where the defendant is maintaining that although he or she may not have been guilty but pled guilty to a previous charge, while represented by his or her current attorney, in a plea bargain that defendant believed would favorably affect the outcome of the present case; and where there has been a total breakdown in communication between the defendant and his or her attorney, one may reasonably conclude that the attorney labored under an actual conflict of interest. Here, McLemore not only had a duty to zealously defend Robertson but also had a duty to respond to a pending disciplinary complaint filed by Robertson. Moreover, it is evident from Ney's comments to the trial court that McLemore's response to the disciplinary complaint was going to be contrary to Robertson's position in both the current and a former case. The disciplinary complaint placed McLemore in the untenable position of becoming both an advocate and an adversary of the client she owed a duty to defend. Under the facts of this case, we find that an actual conflict of interest existed between Robertson and his attorney. The trial court abused its discretion in denying the defense motion to withdraw.

Although the case is reversed and remanded for a new trial, it is necessary to address Robertson's claim that the evidence is insufficient to support his conviction of theft. Specifically, Robertson contends that the State failed to present any evidence that he, rather than his acquaintance, stole the property in question.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Jasper*, 269 Kan. 649, 655, 8 P.3d 708 (2000). A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Murillo*, 269 Kan. 281, 286, 7 P.3d 264 (2000).

Contrary to Robertson's claim that he was simply helping a friend move the property in question, the evidence shows that Robertson took property from the construction site with the intent to permanently deprive the owner of the property. The jury considered Robertson's defense that he was helping a friend move the property and found that his version of the events was not credible. When the evidence is viewed in the light most favorable to the State, a rational factfinder could have determined that Robertson took property from the construction site with the intent to permanently deprive the owner of its use.

Although the evidence was sufficient to support Robertson's conviction of theft, that conviction, as well as the conviction of possession of drug paraphernalia, are reversed and a new trial is ordered on those charges because the trial court abused its discretion in failing to inquire into the actual conflict of interest created by the pending disciplinary complaint. However, as noted previously, because Robertson pled guilty to burglary and did not file a motion to withdraw his guilty plea, that conviction is affirmed.

Affirmed in part, reversed in part, and remanded for a new trial.