NOT DESIGNATED FOR PUBLICATION

No. 118,480

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHNNY R. VEGA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed November 2, 2018. Affirmed.

*Kimberly Streit Vogelsberg*, of the Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN, J., and ROBERT J. FREDERICK, District Judge, assigned.

PER CURIAM: Within the discretion of the court, a plea of guilty may be withdrawn at any time before sentencing "for good cause shown." K.S.A. 2017 Supp. 22-3210(d)(1). Johnny R. Vega pleaded guilty to multiple crimes stemming from his drunken drive to buy cigarettes with a juvenile in the car, which ended with his car crashed on the curb and Vega hiding underneath a nearby bush.

1

Before sentencing, Vega moved to withdraw his plea. The district court denied the motion. He was sentenced and now appeals the denial of his motion to withdraw his plea. Because the motions, records, and files in the case clearly establish that Vega has failed to establish good cause to withdraw his plea, we affirm the decision of the district court.

FACTUAL AND PROCEDURAL HISTORY

Because Vega pleaded guilty, the only recitation of the facts occurred at the preliminary hearing. Briefly, C.K., 12 years old, was outside playing with his friends when Vega—who C.K. had met earlier in the day—came out of the house Vega was moving into across the street and told C.K. to jump in the car and go with him to get cigarettes. C.K. hopped into the car, put on his seat belt, and they left for the gas station to get the cigarettes. They never made it there.

Vega told C.K. he had been drinking beer and C.K. had witnessed Vega drinking earlier in the day. The ride was terrifying for C.K. who said Vega hit two bumps—crushing the seat belt against C.K.'s chest—almost hit four girls and a car, crashed into a curb, drove into a residential yard, and almost hit a fence. A witness testified that Vega "busted two tires" and was traveling an estimated 50 mph in a 35 mph zone. When the car came to a stop, Vega jumped out of the car and ran. C.K. saw him "collapsed dead." A man driving by took C.K. home. After telling his mom what happened, including suggesting that Vega had shoved C.K. into the car involuntarily—an allegation C.K. later recanted—C.K.'s mom went to the scene.

Wichita Police Officer Joey D. Husen responded to the scene but didn't see anyone in the disabled vehicle. Instead, he was directed by persons on the scene to Vega, who was verbally unresponsive, underneath a bush. He had to be physically pulled out from under the bush. He spoke to a witness who saw the vehicle driving recklessly and jump the curb. The witness saw Vega, who he identified as the driver, run from the scene to the

2

bush. C.K.'s mother contacted Officer Husen at the scene and informed him that C.K. was in the car when the accident happened. She informed the officer that "some stranger just brought [C.K.] back from the scene of the accident to [her] house."

Vega was charged in an amended complaint with one count of aggravated endangering of a child, one count of interference with parental custody, one count of driving under the influence, one count of driving with a suspended or canceled license, and one count of criminal restraint.

Six months after the preliminary hearing, Vega filed a pro se motion to dismiss his appointed counsel. At a hearing on the motion the court asked Vega what Vega wanted his counsel to do that had not been done. Vega responded "[w]ell, to get a different plea or get better plea or something." Vega also complained that his counsel had not prepared for a possible trial. The district court denied Vega's motion stating that there was "no irreparable conflict between [defendant] and counsel."

A little over a week later, Vega entered a guilty plea. Prior to the plea hearing, Vega signed an acknowledgement of his rights and entry of plea form which listed his rights, the generalities of the plea agreement, and statements which generally indicated that he understood the plea agreement. He also signed a plea agreement which stated the terms of the plea. At the hearing, he appeared with a different public defender than he had at the hearing on his motion to dismiss appointed counsel. The district court engaged in a plea colloquy with Vega. Vega indicated that he discussed the plea with his attorney, did not have any questions about the plea, understood his rights, understood the plea deal being offered, and that no other promises or threats had been made to get him to plead guilty. When the district court asked Vega whether anyone had promised, coerced, threatened, or done anything to make him plead guilty Vega responded that "he gave me a better plea, so, yeah." But when asked whether anything outside what had been stated

3

on the record had been threatened or promised he said, "No." The State read the terms of the plea agreement and Vega affirmed that he agreed to those terms.

A little over a month after he entered his plea, and before he was sentenced, Vega filed another pro se motion to dismiss his appointed counsel. Vega asserted for the first time that his first attorney had sexually harassed him. Vega stated that he was in the process of filing a disciplinary complaint with the Disciplinary Administrator. At a hearing on the motion, Vega's appointed counsel asked to withdraw from representing Vega. The court allowed Vega's appointed counsel to withdraw, rendering Vega's motion moot.

Another attorney was appointed to represent Vega. That attorney filed a motion requesting the district court to allow Vega to withdraw his plea. Vega filed a motion to dismiss his newly appointed counsel. He also filed a motion to dismiss or withdraw all motions filed by his newly appointed counsel. The district court denied Vega's motion to dismiss counsel. The court told Vega that he could consider representing himself if that was his desire. At a later hearing the district court discussed the ramifications of Vega representing himself. Vega stated that he understood, and the district court allowed him to represent himself. The court also granted Vega's motion to dismiss and withdraw prior motions filed by his counsel.

Vega then filed his own pro se motion to withdraw his plea, followed by an amended motion of the same. He argued that he should be allowed to withdraw his plea because he had a conflict of interest with his original counsel, he didn't understand the plea agreement because he had trouble reading, he was misinformed on the terms of the plea agreement, and his counsel failed to provide him with discovery. Vega noted that he filed a complaint with the Disciplinary Administrator regarding his first counsel's performance.

4

At a hearing on Vega's motions, Vega stated that he felt like he was misled when he made his plea. He explained that he is dyslexic and does not read well. Vega explained that he thought he was going to get probation and did not think he was going to be sentenced to serve any time in prison. Vega acknowledged that the plea agreement was read in court and that he was present for that reading. The district court denied Vega's motion. In its ruling the court stated:

> "[T]he three factors that I look at is whether or not you were represent[ed] by competent counsel, and at the time you were represented Mr. Rudy. And I understand there was an issue with you and Mr. Anderson, and Mr. Rudy stepped in and he went and got you a plea offer. Obviously you considered it a better plea because you wanted to accept that plea and enter into it in court on that February date.

> "And I understand you have dyslexia. I understand that it was read to you. It was also read here in court by Mr. Edwards. And in fact, in the plea agreement they even added some additional language. Which in looking at the transcript and comparing it to the plea agreement, Mr. Edwards recited the entire plea agreement, including the additional language regarding the completion of the prison term, you would then return to jail, and the parties at that time would recommend that you be placed on probation. So all of that was read into the record and it was accurate, and I have no concerns with Mr. Rudy's representation of you.

> "The second factor I looked at is whether or not you were misled, coerced, mistreated, or unfairly taken advantage of. Again, in your motion you cite your dyslexia and inability to understand what was going on. However, everything was read to you, both by your attorney prior to coming in, and even in the motion—excuse me—in the plea I discussed with you the fact that we had the copy of the plea agreement and Defendant's Acknowledgment of Rights and Entry of Plea, and that you discussed both of those documents, you went over them with Mr. Rudy, you then signed them. And I always ask if you have any questions for the Court regarding either document, and you did not. When asked if anyone promised or done anything to get you to enter into this plea, the only response was, 'Yeah, they gave me a better plea offer.' But when I asked if anything else had been promised or done, your response was, 'No.'

5

"Finally, I look at whether or not the plea was fairly and understandably made. Again, I don't have any issues with this plea and the way it was obtained for you, who obtained it, and your acceptance of it."

The court concluded that Vega had not raised a substantial issue of fact or law and denied the motion. After the court's ruling, Vega reiterated that he believed his counsel withheld discovery from him. The court informed Vega that it had already ruled on the motion.

Prior to sentencing Vega requested the court to reappoint counsel to represent him. The court did so.

At sentencing the State requested that the court follow the plea agreement. Vega's counsel requested that the court grant a departure and sentence Vega to probation. The district court denied Vega's motion and sentenced him to prison on some charges and probation on the others. Vega appealed.

## ANALYSIS

Vega's sole argument on appeal is that the district court erred when it denied his motion to withdraw his plea. He argues that his motion set forth specific facts which, at the least, warranted an evidentiary hearing on the matter.

*Our standard of review is de novo.*

"A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2017 Supp. 22-3210(d)(1). Generally, the defendant must establish that the trial court abused its discretion in denying a presentence motion to withdraw plea. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016) (court abused its discretion in basing its

6

denial on factual findings unsupported by the record). However, when the motion to withdraw a plea is summarily denied as it was here, this court exercises unlimited review because this court has access to the same motion, records, and files as the district court. *State v. Moses*, 296 Kan. 1126, 1128, 297 P.3d 1174 (2013).

To determine whether a defendant has shown good cause to warrant the withdrawal of a plea, district courts should consider what are known as the three *Edgar* factors. *State v. Williams*, 290 Kan. 1050, 1053, 236 P.3d 512 (2010) (citing *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 [2006]). Those factors are whether "(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made." *Edgar*, 281 Kan. at 36.

When a motion to withdraw a plea raises substantial issues of fact or law the district court needs to hold an evidentiary hearing. *State v. Fritz*, 299 Kan. 153, 156, 321 P.3d 763 (2014). But "[m]ere conclusions of the defendant are insufficient to raise a substantial issue of fact when no factual basis is alleged or appears in the record." 299 Kan. at 156. So we will examine each of the *Edgar* factors in light of the record and the allegations made by Vega.

*Vega has failed to establish that his counsel was incompetent.*

Vega first asserts that his counsel during plea negotiations was not competent. He argues that his counsel was unfamiliar with the case and counseled him to accept the plea because otherwise he would be convicted and go to prison for a long time. Vega also asserts that his initial attorney failed to provide him discovery which impacted his decision to accept the plea agreement. Specifically, he says he did not receive copies of police reports which did not mention a passenger being present in Vega's vehicle. Finally,

he argues there was a conflict between him and his counsel because he filed a disciplinary complaint.

Vega's first assertion that his counsel was unfamiliar with the case is not supported by the record. In fact, the record indicates that Vega only accepted the plea because his counsel was able to obtain a better plea offer. His counsel's familiarity with the case was enough to secure Vega a more favorable plea deal. As for Vega's claims that his attorney counseled him to accept the plea bargain because he would likely lose at trial, Vega's attorney was doing his job. An attorney is there to provide counsel. In fact, under Kansas Rule of Professional Conduct 2.1 (2018 Kan. S. Ct. R. 339), lawyers should offer "candid advice" on not only the law, but also "moral, economic, social and political factors." The record here indicates that Vega accepted the advice of his attorney and believed that his attorney had obtained a favorable plea deal.

Vega's next assertion that his counsel was incompetent because he did not have all the discovery is also unpersuasive. He claims that had he been aware that the police reports and witness statements did not mention a passenger, he would not have entered into a plea. But the record shows that Vega was aware that the police did not see anyone in the vehicle when they arrived at the scene. He was also aware that the witness that the police spoke with did not see anyone else get out of the vehicle. Moreover, Vega was present for the preliminary hearing when all the evidence was presented. He was aware of all the evidence in the case. Even with that knowledge, Vega still chose to plead guilty.

Finally, Vega's assertion that his counsel was incompetent because Vega had filed a disciplinary complaint against another attorney in his counsel's office is unpersuasive. At no point during the plea hearing, did Vega inform the court or his attorney that he had filed a disciplinary complaint. Additionally, even if Vega filed a disciplinary complaint against his first attorney, he had different counsel at the plea hearing. Also, as part of the plea process, Vega signed an acknowledgement of rights and entry of plea form which

8

stated, in part, that he "believe[d] that [his] lawyer has done a good job counseling and assisting [him], and [he] [was] satisfied with the advice and help [his] lawyer has given [him]." While Vega is correct that a pending disciplinary complaint may create a conflict of interest, it is hard to imagine how a possible pending disciplinary complaint against a different attorney, that said attorney is unaware of, could create a conflict of interest. See *State v. Robertson*, 30 Kan. App. 2d 639, 644, 44 P.3d 1283 (2002) (holding conflict of interest might exist when there is a pending disciplinary complaint against defendant's counsel).

Overall, Vega's assertions do not arise to the level that would require the district court to hold an evidentiary hearing.

*Vega has failed to establish that he was misled and failed to understand his plea.*

Vega next argues that he was misled and did not understandingly enter his plea. He asserts that his counsel at the plea hearing misled him about the terms of the plea. As a result, he claims that he misunderstood the plea. Vega's assertion is unpersuasive. The record plainly shows that Vega was informed about the terms of the plea multiple times.

The Kansas Supreme Court has held that a plea colloquy may remedy any potential error in a written plea agreement. *State v. White*, 289 Kan. 279, 287, 211 P.3d 805 (2009). Courts should "look at the entire plea process—the written plea agreement, if any, counsel's advice, and the plea colloquy—to see whether, when all aspects are considered, the defendant understands the nature and consequences of a plea." *State v. Reu-El*, 306 Kan. 460, 473, 394 P.3d 884 (2017).

In this case before Vega's plea hearing, he reviewed an acknowledgment of rights form. As part of that form, he agreed that he understood that he was pleading to aggravated endangering of a child, driving while under the influence of alcohol, and

9

driving while his license was suspended. He also signed a written form of the plea agreement. The State read the terms of the plea agreement in court. Vega agreed that the State's recitation was consistent with his understanding of the plea agreement.

While Vega's dyslexia might have made it difficult to understand written agreements, he affirmed that he understood the agreement at least twice. Even if Vega's assertion that his attorney misled him about the terms of the plea is correct, it would have been remedied by the later recitation of the agreement in court. See *Reu-El*, 306 Kan. at 473; *White*, 289 Kan. at 287.

Overall, the district court did not err in refusing to hold an evidentiary hearing on Vega's motion. Vega failed to show good cause warranting an evidentiary hearing. See *Williams*, 290 Kan. at 1053.

Affirmed.