(963 P.2d 436)
No. 79,392

STATE OF KANSAS, *Appellee*, v. ROGER A. PATTERSON, *Appellant.*

Opinion filed June 26, 1998.

*Elizabeth Seale Cateforis*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Doyle Baker*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before LEWIS, P.J., PIERRON, J., and JACK L. BURR, District Judge, assigned.

PIERRON, J.: Roger A. Patterson appeals the trial court's decision that his convictions for burglary and theft were subject to the Kansas Sex Offender Registration Act (KSORA), K.S.A. 22-4901 *et seq.*

The facts of this case are undisputed. On April 28, 1997, Patterson entered a *Brady* plea to one count of burglary, K.S.A. 21-3715, one count of misdemeanor theft, K.S.A. 21-3701(a)(1), and one count of misdemeanor possession of marijuana, K.S.A. 1996 Supp. 65-4162. Patterson was arrested on October 16, 1996, when his parole officer found him to be in possession of pornographic materials which were prohibited by his probation agreement. He had been previously convicted of burglary, multiple counts of theft, aggravated assault, and lewd and lascivious conduct. Although the facts are not completely developed in the record, some of these prior convictions involved the theft of women's clothing and public masturbation.

At the preliminary hearing, special enforcement officer Maureen Stanton testified she was called to Patterson's residence on October 16, 1996, by Patterson's parole officer, Brad Jones. Jones had received a call that Patterson had a minor in his home at the time.

The officers were admitted to Patterson's home by Patterson's roommate and former girlfriend, Becky Thomas. Thomas consented to a search of the house. Patterson was found in the basement, where he consented to a search of his belongings. The officers then found a homemade videotape containing a recording of Patterson having sex with a young woman. (The woman was first thought to be a minor, but was later confirmed to be an adult.) Patterson was then arrested, and he consented to a further search of his belongings. The officers opened a locked cabinet and found numerous other pornographic materials and 11 items of women's thong underwear.

Officer Stanton also testified there was a hole in the wall of the basement in which Patterson resided that led to the basement of the adjoining duplex. Thomas told the officers she thought the underwear belonged to the next-door neighbor, Christina Bowman. Bowman stated the underwear belonged to her, and she had noticed several items of her underwear missing from her home between April and October 1996. She also stated she had given Patterson and Thomas permission to enter her home without her presence on two separate occasions, but she never allowed them to disturb or see her clothing.

After the preliminary hearing, the State gave notice it would seek to have Patterson's crimes classified as "sexually motivated" under K.S.A. 22-4902(b)(12) in order to require Patterson to register as a sex offender in the event he was convicted.

Pursuant to a plea agreement, the State concurred with a downward durational departure sentence of 18 months for all three counts. At sentencing, Patterson requested that he be granted probation. He was given a downward durational departure sentence of 18 months for burglary, misdemeanor theft, and misdemeanor possession of marijuana. He was denied probation. The district court also found:

"The possession of the pornographic materials are indicia of the state of mind of Mr. Patterson at the time. There's no question at all that the collection of panties that are normally worn by a member of the opposite sex would have a sexual connotation. The only issue is the sort of sexual connotation contemplated by the legislature in enacting the statute. The purpose of the statute is to protect people

from sexual predators. That's why the requirement of the reporting is made. I will find under the facts of this case that the crime was sexually motivated."

Patterson filed a timely notice of appeal of the denial of his request for probation and the determination that his crimes were sexually motivated under K.S.A. 22-4901 *et seq.*

Patterson argues that this is a simple burglary/theft case and claims the trial court improperly relied upon evidence occurring after the crimes had been committed in making the sexual motivation ruling.

This appeal requires the court to construe the meaning of K.S.A. 22-4902(b)(12) and determine whether Patterson committed a sexually violent crime for which he must register with the State as a sex offender. This statute is part of the KSORA.

Interpretation of a statute is a question of law, over which this court has unlimited review. *In re Tax Appeal of Boeing Co.,* 261 Kan. 508, 514, 930 P.2d 1366 (1997). Furthermore, if we uphold K.S.A. 22-4902(b)(12), we must consider whether the trial court correctly determined that Patterson's crimes were sexually motivated. This is a question of fact. Rulings on questions of fact will be upheld on appeal if supported by substantial competent evidence. See *Tucker v. Hugoton Energy Corp.,* 253 Kan. 373, 377, 855 P.2d 929 (1993).

To ascertain whether Patterson committed a sexually violent crime, we must interpret the language of K.S.A. 22-4902(b)(12). Under this statute, Patterson is guilty of a sexually violent crime if he committed "any *act* which at the time of sentencing for the offense has been determined beyond a reasonable doubt to have been sexually motivated." K.S.A. 22-4902(b)(12). Under the statute, "'sexually motivated' means that one of the purposes for which the defendant committed the *crime* was for the purpose of the defendant's sexual gratification." K.S.A. 22-4902(b)(12).

The immediate problem in construing this statute is the broad language of the first sentence. Read literally, it states that any act which a factfinder determines to be sexually motivated beyond a reasonable doubt is a sexually violent crime. The statute in its operative part, therefore, appears to define all sexually motivated ac-

tivity as a sexually violent crime. The application of a such a rule poses obvious difficulties, and while Patterson does not assert a constitutional argument against the statute based on vagueness or overbreadth, we must first determine the scope of K.S.A. 22-4902(b)(12) before we can evaluate whether there was substantial competent evidence to support the decision of the trial court that Patterson's crimes were sexually motivated.

Can K.S.A. 22-4902(b)(12), therefore, be rationally construed? It is a general rule that an appellate court must give effect to the plain and unambiguous language of a statute without determining in the opinion of the court what the law should be. *State v. Reed*, 23 Kan. App. 2d 661, 663, 934 P.2d 157, *rev. denied 262 Kan. 968* (1997). It is also the function of a court "to interpret a statute to give it the effect intended by the legislature." *In re Application of Zivanovic*, 261 Kan. 191, 192, 929 P.2d 1377 (1996). In determining legislative intent, courts are not limited to the mere language of a statute. Courts can consider the circumstances surrounding the passage of a statute, its purpose, and the effect the statute may have under the various constructions posed by a particular case. See *State v. Gonzales*, 255 Kan. 243, 249, 874 P.2d 612 (1994). Moreover, if a statutory provision is vague or unclear, courts must look to related or surrounding provisions "with a view of reconciling and bringing them into a workable harmony and giving effect to the entire act if it is reasonably possible to do so." *State v. Le*, 260 Kan. 845, 847-48, 926 P.2d 638 (1996).

These canons of statutory construction are to be considered in light of other cautionary rules. While courts must give effect to legislative intent and the plain language of a statute, courts may not "'delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, *if it did not in fact do it, under any reasonable interpretation of the language used,* the defect is one which the legislature alone can correct.'" *Kenyon v. Kansas Power & Light Co.*, 254 Kan. 287, 292-93, 864 P.2d 1161 (1993) (quoting *Harris v. Shanahan*, 192 Kan. 183, 196, 387 P.2d 771 [1963]).

The language of K.S.A. 22-4902(b)(12) is ambiguous. The first sentence of the statute criminalizes all acts which are found beyond

a reasonable doubt to be sexually motivated. The second sentence clarifies the first to some degree, however. It states that if sexual gratification is the purpose of the underlying crime, then the crime is sexually motivated. In light of the second sentence, if the word "acts" in the first sentence means "crimes," then the statute is rather clear—*i.e.*, any crime committed for the sexual gratification of the defendant is a sexually violent crime. But if the word "acts" in the first sentence does not mean "crimes," as Patterson contends, then it appears that a court must determine if any of the acts committed by the defendant during the commission of the crime were undertaken for his sexual gratification. Only then could the crime be called sexually motivated and ultimately sexually violent.

These ambiguities were noted with some concern in *State v. Myers,* 260 Kan. 669, 678-81, 923 P.2d 1024 (1996). Writing for the majority, Justice Six stated: "Although all of the other categories [in K.S.A. 22-4902(b)] are limited to felonies, the last category could apparently include any 'sexually motivated' act resulting in an 'offense.' " 260 Kan. at 698. Justice Six went on to question the wisdom of requiring individuals convicted of consensual sex crimes with minors (*i.e.*, 18 year olds with 15 year olds) to register as sex offenders for at least 10 years under a system which allows unrestricted public access to the registry. 260 Kan. at 699. Despite these comments, the Kansas Supreme Court upheld the constitutionality of the prospective application of KSORA. 260 Kan. at 701-02.

The *Myers* court also noted that the KSORA was passed in the wake of the rape/murder of Stephanie Schmidt by a prior sex offender. The court observed that the Minutes of the House Committee on the Judiciary for January 26, 1994, show that the legislature was concerned primarily with public safety when it passed the KSORA. 260 Kan. at 679-80. This concern is evident throughout the legislative history. The minutes of the same committee on February 25, 1994, page 2, indicate the legislature was concerned with providing the public with the broadest possible access to information about sex offenders in their communities.

In light of the legislative history, it is clear that the legislature passed the KSORA in order to protect Kansas residents from sex

offenders who pose a high risk of reoffense. It is clear from the KSORA that the legislature specifically required all people convicted of Chapter 21, Article 35 crimes, or crimes of a similar nature, to register as sex offenders. K.S.A. 22-4902(b)(1)-(10). It is also clear from the legislative history, and the language of K.S.A. 22-4902(b)(12), that the legislature was concerned with those offenders who commit crimes not commonly called sex crimes, but which nevertheless are criminal offenses committed by persons seeking sexual gratification. Notwithstanding the ambiguous statutory language, it is both reasonable, and consistent with legislative intent, to conclude that K.S.A. 22-4902(b)(12) defines as "sexually violent" all crimes committed for the purpose of sexual gratification.

Patterson argues against this conclusion by citing *State v. Halstien*, 122 Wash. 2d 109, 857 P.2d 270 (1993). In *Halstien*, the Washington Supreme Court stated in dicta, while affirming the trial court, that a state sentence enhancement statute which increased sentences for crimes committed with sexual motivation required a nexus between the crimes and the sexual gratification. 122 Wash. 2d at 120. The case involved a paperboy who broke into a customer's house while she was sleeping, located photographs of the woman, and masturbated over them. When the woman awoke, the boy left the house with a box of condoms and a vibrator belonging to the woman. The boy was later convicted of burglary with a special allegation of sexual motivation pursuant to a juvenile sentence enhancement law for sexually motivated crimes. See Wash. Rev. Code § 13.40.135 (1996).

Patterson argues he received no sexual gratification from the act of stealing Bowman's underwear; thus, under the *Halstien* rationale his act was not sexually motivated. Patterson also claims that what he did with the underwear *after* the crimes were committed is irrelevant as to whether he committed the crimes with sexual motivation.

While *Halstien* did involve a sexual motivation statute, it did not directly involve a sex offender registration law. In fact, the Washington Supreme Court refused to rule on whether the juvenile defendant was required to register under the Washington registra-

tion act because the issue was not ripe until he was released from custody. 122 Wash. 2d at 130. Patterson's case involves the application of a statute designed to protect the public from criminals who prey on others for their own sexual gratification. *Halstien* involved a sentence enhancement provision which was designed to increase the punishment for sex offenders. Accordingly, the two cases are distinguishable.

In any event, we do not read *Halstien* to be so narrow as to require the reversal of any finding of sexual motivation unless an actual sex act was involved, as is contended by Patterson.

When the two sentences of K.S.A. 22-4902(b)(12) are read together and in light of the legislative history, it is not unreasonable to conclude that general crimes committed for the defendant's immediate or eventual sexual gratification are considered "sexually violent" under the KSORA. As such, defendants convicted of such crimes must register as sex offenders under the terms of the statute.

We do have some concern over the possibility that this statute could be extended beyond reason. For instance, would a defendant fall under the provisions of the KSORA if he or she stole contraceptives or engaged in disorderly conduct by shouting sexually explicit words? In the instant case, we are dealing with burglary of a residence, which is a serious crime in itself, so we are not as concerned with the reach of the statute here. But we express no opinion on the issue of its applicability to minor, though arguably "sexually motivated," acts.

The trial court concluded that Patterson's theft of Bowman's underwear while burglarizing her home was sexually motivated under K.S.A. 22-4902(b)(12), and notified him that he would be required to register under the KSORA. The court made this factual finding because Patterson kept the underwear in a locked cabinet containing pornographic materials. The court also noted Patterson stole only women's underwear, which carried a "sexual connotation." As discussed above, the record provides substantial competent evidence with which the trial court could have made these findings. As such, the trial court's factual findings are affirmed.

We now turn to the issue of whether Patterson is required to give blood and saliva samples to the State as a result of his conviction.

At sentencing, Patterson was ordered under K.S.A. 1996 Supp. 21-2511 to give blood and saliva samples to the Kansas Bureau of Investigation. He objected to the requirement that he register as a sex offender upon his release from State custody, but he did not specifically address the blood and saliva issue in his objection. On appeal, he claims K.S.A. 1996 Supp. 21-2511 does not apply to the crimes of theft and burglary even if sexually motivated; thus, he should not have to comply with the court order.

We note that substantive changes were made to K.S.A. 1996 Supp. 22-4907(b) in 1997. We address the law in effect at the time Patterson committed his crimes and was arrested.

An issue not presented to the trial court generally cannot be raised for the first time on appeal. See *State v. Alderson*, 260 Kan. 445, 459, 922 P.2d 435 (1996). Technically, Patterson did not object to the trial court order that he submit blood and saliva samples. He did, however, object to the requirement that he register as a sex offender under the KSORA. Because the blood and saliva order was predicated on the finding of sexual motivation under the KSORA, we find Patterson's objection was timely as to the blood and saliva requirement as well.

Patterson's argument requires us to construe K.S.A. 1996 Supp. 21-2511 and K.S.A. 1996 Supp. 22-4907(b)(3). As noted above, interpretation of a statute is a question of law over which this court has unlimited review. *In re Tax Appeal of Boeing Co.*, 261 Kan. at 514.

K.S.A. 1996 Supp. 21-2511(a) states in part:

"Any person convicted as an adult . . . because of the commission of an unlawful sexual act as defined in subsection (4) of K.S.A. 21-3501, and amendments thereto, or convicted as an adult . . . because of the commission of a violation of K.S.A. 21-3401, 21-3402, 21-3510, 21-3511, 21-3516, 21-3602, 21-3603, or 21-3609 . . . shall be required to submit specimens of blood and saliva to the Kansas bureau of investigation . . . ."

The statute states the blood and saliva samples will be used to compile a DNA database. K.S.A. 1996 Supp. 21-2511(f). The stat-

ute makes no reference to the crimes of theft or burglary, nor does it refer to crimes not specifically mentioned but that were committed with sexual motivation.

K.S.A. 1996 Supp. 22-4907(b)(3) states: "The sex offender shall also provide to the registering law enforcement agency: . . . (3) DNA exemplars, unless already on file."

The trial court erred when it required Patterson to submit DNA exemplars under K.S.A. 1996 Supp. 21-2511(a) because that statute does not address the crimes for which he was convicted. However, the court could have ordered his submission of the DNA material under K.S.A. 1996 Supp. 22-4907(b)(3), which refers to "sex offenders," a category under which he falls as a result of the sexually motivated nature of his crimes. "[A] trial court's decision that reaches the right result will be upheld even though the court relied on the wrong reason for its decision." *Doolin v. State,* 24 Kan. App. 2d 500, 504, 947 P.2d 454 (1997). Accordingly, the trial court's order requiring Patterson to submit blood and saliva samples is affirmed.

Affirmed.