(214 P.3d 1198)
No. 100,494

STATE OF KANSAS, *Appellee*, v. JOSHUA B. COMAN, *Appellant*.
Petition for review granted September 8, 2010.

Opinion filed August 28, 2009.

*Carl F.A. Maughan* and *Catherine A. Zigtema*, of Maughan & Maughan LC, of Wichita, for appellant.

*Boyd K. Isherwood,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Steve Six,* attorney general, for appellee.

Before RULON, C.J., GREENE and LEBEN, JJ.

GREENE, J.: Joshua B. Coman appeals his conviction for criminal sodomy under K.S.A. 21-3505(a)(1) and the district court's order that he register as a sex offender, arguing that his conviction does not require registration under the Kansas Offender Registration Act (KORA) and that K.S.A. 21-3505(a)(1) is unconstitutional in criminalizing sex between a human and an animal. We reject Coman's arguments and affirm his conviction and registration order.

## *Factual and Procedural Background*

Upon entering her garage to access the freezer, the complaining witness reported seeing her ex-boyfriend Coman lying on the floor of the garage with his pants and underwear down around his ankles, his shirt pulled up, and her female Rottweiler lying beside him. When she turned on the light, Coman moved his hips away from the dog and quickly pulled his pants up. Coman then said he loved the dog, Yodi, and he told the witness, "I don't expect you to understand, but I had to see her one more time."

When police arrived, a pat-down revealed Coman's penis remained erect and he had a bottle of personal lubricant in his left front pocket. Coman denied having intercourse with the dog, but he admitted that he tongue-kissed her and digitally penetrated her. A search of Coman's cell phone revealed several photos of dogs and one video clip of a man engaging in sexual intercourse with a canine.

Coman was charged with one count of criminal sodomy under K.S.A. 21-3505(a)(1), with sexual motivation requiring registration under K.S.A. 22-4902(c)(14). He pled guilty to this offense and was sentenced to 6 months in the county jail, to run consecutive to a Reno County sentence for similar conduct. He was also ordered to receive psychiatric treatment and to register as a sex offender under KORA.

Coman appeals, challenging his conviction and the registration order.

### Should We Reach Coman's Challenge to the Constitutionality of K.S.A. 21-3505(a)(1)?

We are unable to reach the merits of Coman's constitutional challenge to K.S.A. 21-3505(a)(1) due to a host of procedural bars.

First, Coman failed to appeal his conviction. His notice of appeal states that he is appealing the "sentence imposed . . . specifically . . . from that part . . . which requires this Defendant to register." We obtain jurisdiction to review rulings that are identified in the notice of appeal, and where other rulings or judgments are thereafter challenged, we must dismiss such challenges for lack of appellate jurisdiction. See *State v. Huff*, 278 Kan. 214, 217, 92 P.3d 604 (2004).

Second, Coman entered a guilty plea to the charge framed under K.S.A. 21-3505(a)(1), the statute that he now seeks to challenge. It is elementary that a plea of guilty freely and voluntarily entered after consultation with counsel and with full knowledge of the possible consequences waives any defects or irregularities occurring in any of the prior proceedings. *McGoldrick v. State*, 33 Kan. App. 2d 466, 473, 104 P.3d 416, *rev. denied* 279 Kan. 1007 (2005). This rule applies even to alleged defects with constitutional dimensions. *State v. Melton*, 207 Kan. 700, 712-13, 486 P.2d 1361 (1971).

Finally, Coman has filed no motion to withdraw his plea at the trial court level and is therefore precluded from seeking such relief for the first time on appeal. See *State v. Robertson*, 30 Kan. App. 2d 639, 641, 44 P.3d 1283 (2002).

For these reasons, and any one of them would suffice, we are obliged to dismiss Coman's challenge to the constitutionality of K.S.A. 21-3505(a)(1).

### Did the District Court Err in Ordering Coman to Register as a Sex Offender?

Coman next argues that the district court erred when it ordered him to register as a sex offender after it found that his crime had been sexually motivated. Specifically, Coman contends that the legislature purposefully excluded his crime of conviction, criminal sodomy as defined by K.S.A. 21-3505(a)(1), from the list of specifically described "sexually violent" crimes in K.S.A. 22-

4902(c)(1)-(11), and argues that this purposeful exclusion precludes the court from requiring him to register under the catch-all provision in K.S.A. 22-4902(c)(14). Notably, Coman does not dispute on appeal that his offense was motivated by sexual gratification.

## Standards of Review

The Kansas Offender Registration Act governs the registration of sex offenders. K.S.A. 22-4901 *et seq.* Interpretation of a statute is a question of law over which this court has unlimited review. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). An appellate court's first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

"When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction." *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007). However, when ambiguity arises because various statutes are in conflict, the canons of statutory construction must be applied and legislative history may be consulted for indications of legislative intent. *State v. Valladarez*, 288 Kan. 671, 678-79, 206 P.3d 879 (2009).

When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act in pari materia with a view of reconciling and bringing the provisions into workable harmony if possible. *State v. Breedlove*, 285 Kan. 1006, 1015, 179 P.3d 1115 (2008). However, a "specific statute controls over a general statute. [Citation omitted.] Likewise, a specific provision within a statute controls over a more general provision within the statute." *In re K.M.H.*, 285 Kan. at 82.

Finally, as a general rule, criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt as to the

meaning of the statute is decided in favor of the accused. Nevertheless, this rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Paul*, 285 Kan. 658, 662, 175 P.3d 840 (2008).

## The Statutes at Issue

K.S.A. 22-4902 provides definitions for KORA, and its provisions give rise to Coman's challenge in this appeal. K.S.A. 22-4902(c) defines "sexually violent crime" to include 11 specific crimes, and three general categories of crime. Among the specific crimes is subsection (c)(4), "criminal sodomy as defined in subsection (a)(2) and (a)(3) of K.S.A. 21-3505 and amendments thereto." Coman's principal argument on appeal is that the legislative omission of subsection (a)(1) of K.S.A. 21-3505 (his crime of conviction) from the specific listed crimes in K.S.A. 22-4902(c)(1)-(11) demonstrates legislative intent to exclude this crime from the definition of sexually violent crimes and therefore from the registration requirements of KORA. The dissent essentially agrees with Coman, finding the statute ambiguous and applying the rule of lenity. See *State v. Paul*, 285 Kan. 658, 662, 175 P.3d 840 (2007) (reasonable doubts about meaning of a criminal statute are resolved in favor of the person accused).

K.S.A. 21-3505 proscribes criminal sodomy as follows:

"(a) Criminal sodomy is:

(1) Sodomy between persons who are 16 or more years of age and members of the same sex or between a person and an animal;

(2) sodomy with a child who is 14 or more years of age but less than 16 years of age; or

(3) causing a child 14 or more years of age but less than 16 years of age to engage in sodomy with any person or animal."

This statute classifies sodomy defined in subsection (a)(1) as a class B nonperson misdemeanor and classifies sodomy defined in the other subsections as severity level 3, person felonies.

## We Construe and Apply These Statutes

We conclude that the omission of subsection (a)(1) of the criminal sodomy statute from the specific crimes listed in K.S.A. 22-

4902(c)(1)-(11) does not indicate an intent *necessarily to exclude* all such convictions from registration requirements, but only an intent to exclude such convictions from *per se* inclusion. We believe subsection (c)(14) of K.S.A. 22-4902 may be applied to "any" crime. This subsection creates a general category of crimes that may be considered "sexually violent" in providing within the definition:

"*any act* which at the time of sentencing for the offense has been determined beyond a reasonable doubt to have been sexually motivated. As used in this subparagraph, 'sexually motivated' means that one of the purposes for which the defendant committed the crime was for the purpose of the defendant's sexual gratification." (Emphasis added.) K.S.A. 22-4902(c)(14).

We believe the legislative intent reflects the belief that not *every* violation of K.S.A. 21-3505(a)(1) should be considered sexually violent, but that a violation of that statute *could* be considered to be sexually violent if the facts of the offense meet the general definition in subsection (c)(14). Coman and the dissent construe the statute in such a manner that subsection (c)(14) is emasculated. This we refuse to do given our mandate to consider various provisions of the act in pari materia with a view of reconciliation of all provisions. See *Breedlove*, 285 Kan. at 1015. If the failure of the legislature to list specific offenses within subsections (c)(1) through (11) insulates all other crimes from being considered sexually violent, the general category defined by subsection (c)(14) would be rendered meaningless.

We simply construe the plain words of subsection (c)(14) to mean that "any act" may be considered sexually violent without regard to its specific reference or absence within the other subsections if the conduct meets the requirements in subsection (c)(14). There is no ambiguity here; the statute is clear in providing that *all* convictions for the specific crimes listed in subsections (c)(1) through (11) will be considered sexually violent, but any other criminal offense may also be considered within the definition if the facts meet the criteria of subsection (c)(14). There is no cause to apply the rule of lenity where there is a reasonable and sensible judicial interpretation that effects legislative design. See *Paul*, 285 Kan. at 662.

Moreover, our construction and application is consistent with a host of appellate decisions construing subsection (c)(14) and its predecessor. Most compelling is Judge Pierron's opinion in *State v. Patterson*, 25 Kan. App. 2d 245, 963 P.3d 436 (1998), where the panel considered whether convictions of burglary and theft could be considered to be sexually motivated for purposes of KORA. Construing the predecessor to K.S.A. 22-4902(c)(14), the opinion states:

"In light of the legislative history, it is clear that the legislature passed the KSORA in order to protect Kansas residents from sex offenders who pose a high risk of reoffense. It is clear from the KSORA that the legislature specifically required all people convicted of Chapter 21, Article 35 crimes, or crimes of a similar nature, to register as sex offenders. K.S.A. 22-4902(b)(1)-(10). It is also clear from the legislative history, and the language of K.S.A. 22-4902(b)(12), that the legislature was concerned with those offenders who commit crimes not commonly called sex crimes, but which nevertheless are criminal offenses committed by persons seeking sexual gratification. Notwithstanding the ambiguous statutory language, it is both reasonable, and consistent with legislative intent, to conclude that K.S.A. 22-4902(b)(12) [predecessor to K.S.A. 22-4902(c)(14)] defines as 'sexually violent' all crimes committed for the purposes of sexual gratification." 25 Kan. App. 2d at 249-50.

Note that the ambiguity addressed by Judge Pierron is the categorization of "sexually violent" for all crimes committed for sexual gratification, *not* the issue here.

Our court has consistently construed KORA to conclude that *any act* meeting the requirement of the general definitional subsection for sexually motivated crime will implicate registration without regard to inclusion or exclusion of the crime of conviction within the specific listing provided by other subsections. See, *e.g.*, *State v. Lembke*, 2008 WL 1946845 (Kan. App. 2008) (unpublished opinion) (affirming as sexually violent a conviction for possession of child pornography); *State v. Stenger*, 2007 WL 1530118 (Kan. App. 2007) (unpublished opinion) (affirming as sexually motivated a conviction for furnishing alcoholic beverages to a minor for illicit purposes); *State v. Lopez*, 25 Kan. App. 2d 777, 973 P.2d 802 (1998) (affirming attempted aggravated burglary as sexually motivated).

Notwithstanding the legislature's exclusion of K.S.A. 21-3505(a)(1) from the list of specific sexually violent crimes in K.S.A. 22-4902(c)(1)-(11), this does not indicate any intent to have convictions under this statute insulated from the consideration for registration obligations under K.S.A. 22-4902(c)(14). We agree with the district court in ordering Coman to register under this statute after finding beyond a reasonable doubt that his crime was sexually motivated.

Affirmed in part; dismissed in part.

\* \* \*

LEBEN, J., dissenting: The legislature has adopted a 14-item list describing the crimes for which a convicted offender must register as a sex offender. In one of the items specifically listed, the legislature has included two of three subsections of the Kansas sodomy statute but has excluded another. K.S.A. 22-4902(c)(4). The fourteenth item in the list is a catch-all provision covering "any act which at the time of sentencing for the offense has been determined beyond a reasonable doubt to have been sexually motivated." K.S.A. 22-4902(c)(14).

The State argues in this case that the catch-all provision may be used to reach the sodomy section that the legislature excluded. But the acceptance of that argument would make the legislature's decision to exclude it meaningless and would fly in the face of the rule of lenity as it has long been applied in Kansas courts. In my opinion, the catch-all provision may not be used to reach conduct that was specifically excluded by the legislature in an earlier section of the statute. I therefore dissent from the court's opinion, which greatly restricts the application of the rule of lenity in Kansas and overturns the legislative decision to exclude this version of sodomy from the sex-offender-registration statute.

## STATUTORY BACKGROUND

Let's start with a review of the two key statutes at issue: the Kansas sodomy law, K.S.A. 21-3505 and 21-3506, and the Kansas Offender Registration Act, K.S.A. 22-4901 *et seq.*

*The Kansas Sodomy Law*

The primary Kansas sodomy statute, K.S.A. 21-3505, has three subsections defining three different forms of sodomy. The first subsection prohibits both homosexual conduct and bestiality; the last two prohibit sodomy with a child who is 14 or 15 and causing a child who is 14 or 15 to engage in sodomy or bestiality:

"(a) Criminal sodomy is:

(1) Sodomy between persons who are 16 or more years of age and members of the same sex or between a person and an animal;

(2) sodomy with a child who is 14 or more years of age but less than 16 years of age; or

(3) causing a child 14 or more years of age but less than 16 years of age to engage in sodomy with any person or animal." K.S.A. 21-3505(a).

Violations of subsection (1)—homosexual conduct and bestiality—are class B nonperson misdemeanors; violations of subsections (2) and (3)—crimes against children ages 14 or 15—are severity-level 3 person felonies. K.S.A. 21-3505(c).

When the victim is under 14 years old, or is overcome by force or fear, or is unconscious, or is mentally unable to consent, the crime becomes aggravated criminal sodomy under K.S.A. 21-3506. Aggravated criminal sodomy is either a severity-level 1 felony or an off-grid felony, depending upon the age of the victim and perpetrator (rising to an off-grid felony for perpetrators 18 or older who victimize children under 14).

Before 1992, K.S.A. 21-3505 covered only the provisions now found in subsection (a)(1), homosexuality and bestiality, and the offense was a class B misdemeanor. In 1992, the provisions now found in subsections (a)(2) and (3) were added. L. 1992, ch. 298, sec. 23.

Sodomy is defined in K.S.A. 21-3501(2) to mean oral contact with the genitalia, anal penetration of the male or female by any body part or object, or "oral or anal copulation or sexual intercourse between a person and an animal." The reach of K.S.A. 21-3505(a)(1) to homosexual conduct today is questionable. See *Lawrence v. Texas*, 539 U.S. 558, 156 L. Ed. 2d 508, 123 S. Ct. 2472 (2003); *State v. Limon*, 280 Kan. 275, 301-02, 122 P.3d 22 (2005). But we need not concern ourselves with that to decide

Coman's case because only the prohibition on bestiality, or sex with animals, is at issue here.

In sum, the Kansas sodomy law proscribes both sodomy and bestiality in the same statute. Its definitions distinguish between homosexual conduct between persons 16 or older and bestiality, which are *nonperson misdemeanors*, and sodomy involving children or those who are coerced or can't consent, which is a serious *person felony*.

### The Kansas Offender Registration Act

The Kansas Offender Registration Act, enacted in 1993, requires those who have committed specified sex offenses to register on publicly available lists that let citizens keep track of the identity and location of these offenders. Failure to register as a sex offender when required to do so is itself a severity-level 5 felony, and it's a separate felony for every 30 days an offender fails to register as required. K.S.A. 22-4903(a).

To identify who must register, we must refer to a series of definitions. An "offender" must register, K.S.A. 22-4904, and "offender" is defined to include a "sex offender," a "violent offender," or a "sexually violent predator," which are all separately defined in K.S.A. 22-2902. Coman was required to register as a sex offender, so we'll focus on that definition. I will look at the statute as it existed at the time of Coman's offense and conviction, which occurred in February and March 2008.

A sex offender under this statute is someone who has committed a "sexually violent crime." K.S.A. 22-4902(b). That's where our 14-item list comes in: the legislature has first listed 11 specific crimes, then has included similar convictions in other jurisdictions under subsection 12, attempts, conspiracies, and solicitations under subsection 13, and the catch-all at issue in Coman's case for acts that were sexually motivated under subsection 14:

"(c) 'Sexually violent crime' means:
(1) Rape as defined in K.S.A. 21-3502 and amendments thereto;
(2) indecent liberties with a child as defined in K.S.A. 21-3503 and amendments thereto;
(3) aggravated indecent liberties with a child as defined in K.S.A. 21-3504 and amendments thereto;

(4) criminal sodomy as defined in subsection (a)(2) and (a)(3) of K.S.A. 21-3505 and amendments thereto;

(5) aggravated criminal sodomy as defined in K.S.A. 21-3506 and amendments thereto;

(6) indecent solicitation of a child as defined by K.S.A. 21-3510 and amendments thereto;

(7) aggravated indecent solicitation of a child as defined by K.S.A. 21-3511 and amendments thereto;

(8) sexual exploitation of a child as defined by K.S.A. 21-3516 and amendments thereto;

(9) sexual battery as defined by K.S.A. 21-3517 and amendments thereto;

(10) aggravated sexual battery as defined by K.S.A. 21-3518 and amendments thereto;

(11) aggravated incest as defined by K.S.A. 21-3603 and amendments thereto; or

(12) any conviction for an offense in effect at any time prior to the effective date of this act, that is comparable to a sexually violent crime as defined in subparagraphs (1) through (11), or any federal, military or other state conviction for an offense that under the laws of this state would be a sexually violent crime as defined in this section;

(13) an attempt, conspiracy or criminal solicitation, as defined in K.S.A. 21-3301, 21-3302 or 21-3303 and amendments thereto, of a sexually violent crime, as defined in this section; or

(14) any act which at the time of sentencing for the offense has been determined beyond a reasonable doubt to have been sexually motivated. As used in this subparagraph, 'sexually motivated' means that one of the purposes for which the defendant committed the crime was for the purpose of the defendant's sexual gratification." K.S.A. 22-4902(c).

When the statute was enacted in 1993, it was a 12-item list. Sexual battery and aggravated incest, under subsections (9) and (11), were added later. See L. 1993, ch. 253, sec. 18. In the original statute, all of the listed offenses were felonies. One misdemeanor, sexual battery, was added to the list in 1997. L. 1997, ch. 181, sec. 8.

Coman was convicted of sodomy in violation of K.S.A. 21-3505(a)(1), which is not included in the list of offenses requiring registration. Thus, unless Coman's offense is covered by the catch-all provision, he is not required to register.

## INTERPRETING THE CATCH-ALL PROVISION

We must now turn our attention to the catch-all provision: does it cover Coman's sodomy in violation of K.S.A. 21-3505(a)(1)? I

will examine the traditional sources we can use to determine the meaning of a statute.

The Text. Statutory interpretation always starts with the text of the statute. We also consider grammatical canons of construction, which are based on normal language use and thus give clues to legislative intent.

We cannot answer our question based solely on the text of the catch-all provision. The majority is correct that it could be read to cover Coman's conduct, which was a sexually motivated act. But one of our canons, the rule against surplusage, tells us that we should normally read each section of a statute to add new meaning, not to be redundant. If the catch-all covers all sexually motivated acts, whether listed or not, why have the list? Another canon also comes into play: *expressio unius est exlusio alterius* (the expression of one thing excludes any inference that other similar items are included). The legislature specifically included two of the three subsections of the sodomy statute and excluded the third. That must mean something.

Statutory Structure. The list as enacted included nine separate crimes, plus coverage of similar crimes in other jurisdictions, coverage of attempts, conspiracies, and solicitations, and the catch-all provision. All nine of the included crimes were felonies, and all nine were sex crimes in which the defendant's sexual motivation would be a given.

That structure gives us a strong clue about why the legislature omitted one subsection of the sodomy statute—the legislature omitted the misdemeanor form of sodomy and included only felony sodomy. While misdemeanor sodomy was similar to the listed crimes in that it too would be sexually motivated, it differed in the seriousness of the offense. Misdemeanor sodomy is a class B misdemeanor, punishable by up to 6 months in jail. By contrast, all of the listed crimes in K.S.A. 22-4902(c) as it passed in 1993 were felonies. Even simple possession of marijuana is only punishable by up to 1 year in jail as a class A misdemeanor. On the scale of crimes, then, there is a substantial difference between the omitted class B misdemeanor and the included felony offenses.

Another aspect of the statutory structure is worth noting. A sex offender's registration requirement is triggered when he or she has committed a "sexually violent crime." Of course, the legislature has defined what a sexually violent crime is for the purposes of this statute. But the omitted misdemeanor sodomy offense in part prohibits consensual gay sex, and there's certainly nothing inherently violent in that. The legislature's omission of misdemeanor sodomy from the list of included offenses is certainly intentional. No other provision in K.S.A. 22-4902(c) included only certain subsections of a single criminal statute while excluding another subsection and had logical bases for that exclusion.

Legislative History. The 1993 legislature enacted the Habitual Sex Offender Act, which over the years has been renamed the Kansas Offender Registration Act. Its original provisions were inserted into Senate Bill 170 in a conference committee. But an offender registration act had previously been included in another bill, Senate Bill 300, which had been incorporated into House Bill 2411 before it passed the House. Reviewing the sequence of the drafts in the 1993 legislature sheds further light on the legislature's intent in having a catch-all provision.

Two statutory initiatives wove an intersecting course through the 1993 legislative session. First, there was already a statute passed in 1992 with a delayed effective date of July 1, 1993, that would have required postrelease supervision for felons convicted of sexually violent crimes, and the Sentencing Commission had recommended some amendments to it. L. 1992, ch. 239, sec. 270 (amending K.S.A. 1991 Supp. 22-3717). Second, legislators proposed a new scheme for sex-offender registration. All of these provisions ultimately wound up in S.B. 170.

When the 1993 session began, K.S.A. 22-3717 was set to have a list of specific sexually violent crimes (like rape, indecent liberties with a child, and aggravated criminal sodomy) and a list of nonsex crimes (like murder and kidnapping) that qualified as a sexually violent crime if proved to have been sexually motivated. L. 1992, ch. 239, sec. 270 (amending K.S.A. 1991 Supp. 22-3717[d] effective July 1, 1993). The list of crimes included sexual battery, a misdemeanor. The Sentencing Commission recommended that

misdemeanor offenses be removed from the list, perhaps because the postrelease supervision was from the Department of Corrections and Parole Board, which only administered felony supervision. Minutes, House Jud. Comm., February 26, 1993. The House agreed to that modification and passed H.B. 2411. House J. 1993, p. 356. But when the bill went to the Senate, it put the sex-offender registration provisions that had been part of S.B. 300 into H.B. 2411. Minutes, Sen. Jud. Comm., April 6, 1993.

As amended by the Senate, H.B. 2411 provided that K.S.A. 22-3717 would be amended to eliminate misdemeanor offenses and to change the method by which nonsex crimes that were sexually motivated might trigger the postrelease supervision requirements. Rather than including a specific listing of offenses like murder and kidnapping, H.B. 2411 provided that K.S.A. 22-3717 should be amended to include a list of felony sex crimes followed by the catch-all "any act which at the time of sentencing for the offense has been determined beyond a reasonable doubt to have been sexually motivated." The Senate also amended H.B. 2411 by incorporating the sex-offender registration provisions that had been part of S.B. 300. As then included, its definition section regarding what constituted a sexually violent crime was limited to offenses against children (indecent solicitation, sexual exploitation, and incest).

H.B. 2411 passed the Senate as amended. Since its content had changed from the version passed by the House, both chambers appointed a conference committee. Meanwhile, the Senate had passed S.B. 170, a bill that had made an unrelated change to the Kansas rape statute. When it came to the House, however, the House put the provisions that had initially been in H.B. 2411 into it. Minutes, House Jud. Comm., March 25, 1993. S.B. 170 passed the House as amended, and it too went to the conference committee.

The conference committee revised the provisions that had been in H.B. 2411 regarding both postrelease supervision requirements and a new offender-registration law; it then put everything into S.B. 170. S.B. 170 then passed both chambers, and H.B. 2411 became a footnote in the legislative history.

As passed, S.B. 170 amended the definition of a sexually violent crime for postrelease supervision by eliminating misdemeanor offenses, deleting the list of nonsexual crimes that could qualify if sexually motivated, and adding a catch-all provision for "any act which at the time of sentencing for the offense has been determined beyond a reasonable doubt to have been sexually motivated." Subsections (a)(2) and (a)(3) of the sodomy statute, K.S.A. 21-3505, were added to the list of sexually violent offenses, but misdemeanor sodomy under K.S.A. 21-3505(a)(1) was not included. L. 1993, ch. 253, sec. 11. The *exact* same list that defined sexually motivated crimes and its catch-all provision were then used *again* in the sex-offender registration act. L. 1993, ch. 253, sec. 18.

What does this tell us? The legislature considered its revision of K.S.A. 22-3717 governing which sex offenders would be subject to special postrelease supervision requirements and the new sex-offender registration act at the same time, through the same committees, and ultimately through a single bill.

The revision of K.S.A. 22-3717 passed in 1992 had a limited list of nonsex crimes that could trigger postrelease supervision as a sex offender *if* the crime had been found to have been sexually motivated. We do not have any direct explanation of why the legislature switched from using a list of potentially qualifying crimes to using a catch-all and no list. But a preexisting and limited list could prove problematic if the legislators didn't think of every offense that's not normally a sex offense that might, in a given case, be sexually motivated. That problem would be solved by changing from a limited list to catch-all ("any act") language. But the character of the two different groupings remained the same. There were specific crimes listed that are sex crimes and may be presumed to have been sexually motivated. Other crimes that are not generally sexually motivated, like murder or kidnapping, also may qualify if they are sexually motivated. Read in that way, the change makes sense, and each part of the statute retains independent meaning.

Before the conference committee, H.B. 2411 as passed by the Senate included an offender-registration provision only triggered by offenses against children. S.B. 170 as passed by the House did not include the offender-registration provision. The offender-reg-

istration provisions adopted in 1993 came in conference committee, and the sections defining the terms were matched to those picked for the amended K.S.A. 22-3717. We don't have any direct explanation of that, either, but having equivalent definitions for sex offenders who needed postrelease supervision and for those who needed to be told (during postrelease supervision) to register certainly would make things easier to administer.

We know that the legislature was responding to a Sentencing Commission recommendation that misdemeanor offenses be omitted from K.S.A. 22-3717. We also know that sodomy was not part of the list of offenses in K.S.A. 22-3717 before 1993. The legislature specifically chose in 1993 to include only felony sodomy in both the postrelease supervision statute and the offender-registration statute.

It also seems to me that the way in which the catch-all provision was phrased is explained by the sequence of events. K.S.A. 22-3717 had been designed to ensure that sex-offender programming would be required either in prison or in postrelease supervision for sex offenders. By including specified nonsex crimes that could be sexually motivated as a trigger for the additional supervision, the legislature had not fully covered all the potential crimes that might be sexually motivated. Before 1993, there were two ways in which an offender might be covered by the postrelease supervision requirement: committing a listed sex crime, for which sexual motivation was a given, or committing a listed nonsex crime and having the State prove sexual motivation. There is no reason to believe that the 1993 amendment changed that basic structure other than to allow any nonsex crime to be used rather than a limited list of them.

Precedent. No case has previously addressed whether the catch-all provision in the Kansas Offender Registration Act may be used to cover the one form of sodomy that was intentionally omitted by the legislature from the list of covered sex offenses. Most cases that have discussed the catch-all provision have been ones in which it was used to reach nonsex offenses that aren't usually sexually motivated. See *State v. Chambers*, 36 Kan. App. 2d 228, 239-40, 138 P.3d 405 (2006) (burglary and theft); *State v. Lopez*, 25 Kan. App.

2d 777, 778, 973 P.2d 802 (1998) (attempted aggravated burglary); *State v. Patterson*, 25 Kan. App. 2d 245, 249-51, 963 P.2d 436 (1998) (burglary and theft); *State v. Stenger*, 2007 WL 1530118, at *3-*4 (Kan. App. 2007) (unpublished opinion) (furnishing alcohol to a minor for illicit purposes); *State v. Ward*, 2004 WL 324214, *1-*2 (Kan. App. 2004) (unpublished opinion) (criminal threat).

The cases cited by the majority do not lead to any conclusion about whether the misdemeanor sodomy offense the legislature excluded from the specific list of crimes may be brought in via the catch-all provision. *Patterson*, *Stenger*, and *Lopez* are merely examples of cases in which the catch-all was used to reach nonsex offenses, which aren't usually sexually motivated. *Patterson* has some language seized upon by the majority saying that the catch-all covers "all crimes committed for the purposes of sexual gratification." 25 Kan. App. 2d at 250. But the *Patterson* opinion also said it was clear from the statutory language and legislative history "that *the legislature was concerned* [in the catch-all provision] *with those offenders who commit crimes not commonly called sex crimes*, but which nevertheless are criminal offenses committed by persons seeking sexual gratification." (Emphasis added.) 25 Kan. App. 2d at 250. Since the holding in *Patterson* was simply that a sexually motivated burglary and theft could be reached by the catch-all provision, the language used by the court there cannot be read to provide any clear direction for our case.

Another case cited by the majority, *State v. Lembke*, 2008 WL 1946845, at *1-*2 (Kan. App. 2008) (unpublished opinion), involved a conviction for attempted sexual exploitation of a child. That offense is one of the listed offenses, so the catch-all provision wasn't needed to require that the offender register. Lembke's argument was that his crime needed not only to be listed but also to be physically violent in a literal way to be a "sexually violent crime" requiring registration. That argument was rejected because the legislature had by definition included attempted sexual exploitation of a child as a sexually violent offense. *Lembke* too provides no guidance for our case.

The State cites *State v. Wilkinson*, 269 Kan. 603, 9 P.3d 1 (2000), claiming that the court implicitly recognized in *Wilkinson* that an

unlisted sex crime could be used via the catch-all provision. The defendant in *Wilkinson* committed incest, and incest had not been included at that time as a listed sex offense in K.S.A. 22-4902(c). But the defendant in *Wilkinson* didn't raise any issue about whether he could be found to have committed a sexually violent crime through application of the catch-all provision to an unlisted sex offense. The only issue raised in *Wilkinson* was a procedural due process challenge, claiming that a hearing to determine whether the offender actually posed a significant threat of reoffense before registration could be required.

There do not appear to be any past Kansas cases that suggest a particular outcome for Coman's case.

Evolution of the Statute. We must begin our search for the intent of the catch-all provision with the 1993 legislature, which enacted it. But sometimes a statutory scheme will be so amended over the years that the meaning of a particular provision may shift over time, so we must also consider whether there have been any significant changes that could affect the meaning of the catch-all provision.

The 1993 legislature passed a relatively limited act that was then called the Habitual Sex Offender Registration Act. Several expansions have occurred over the years, expanding registration requirements to first-time sex offenders and eventually to some violent offenders in nonsex crimes. See generally Kittel, *K.S.A. 22-4901 et seq.—Offender Registration in Kansas*, 69 J.K.B.A. 28, 29-30 (June/July 2000).

Despite significant overall changes in the statute, there has been only modest revision to the definition of a sexually violent crime. As already noted, the legislature has added sexual battery and aggravated incest to the list of sex offenses triggering registration; the 2008 legislature also added electronic solicitation of a child to commit an unlawful sexual act to the list, though that occurred after Coman's conviction. L. 2008, ch. 74, sec. 1. It appears that the legislature has attempted to update the list of sex offenses as new crimes have been created or as gaps have been noted. The electronic solicitation offense was made a crime in 2006, L. 2006, ch. 212, sec. 7, and aggravated incest was added in 1997, L. 1997, ch. 181, sec. 8, after the offense in *Wilkinson* had been committed.

Sexual battery was also added in 1997, and I do not know what led to its addition. But the 1993 rationale I have noted for excluding misdemeanors altogether would no longer have had much impact. That appears to have been based upon the Sentencing Commission's desire to eliminate misdemeanors from the parallel list of crimes that would prompt postrelease supervision for sex offenders by the Department of Corrections and Parole Board, which had no involvement with misdemeanor offenders. And by 1997, Kansas had moved forward separately with a statutory scheme for the civil confinement of dangerous sexually violent predators. See K.S.A. 59-29a01.

The expansion of the registration statute to some violent nonsex offenders does not seem to impact interpretation of the definition of sexually violent crimes under K.S.A. 22-4902(c). While the legislature has now required public registration for those convicted of crimes like murder and manslaughter, K.S.A. 22-4902(d), that simply represents a judgment that some offenders who commit specified violent crimes need to register whether the crime was sexually motivated or not.

Although there have been some significant changes in the statutory scheme for offender registration since 1993, none of the changes seem to impact the interpretation of the definition of sexually violent crime enacted in 1993. Our goal remains to determine what the 1993 legislature intended by including only two of three subsections of the sodomy statute while also including a catch-all provision.

Substantive Canons. When considering the text of the statute, I have already discussed two canons of statutory construction: the rule against surplusage and *expressio unius*. Those are grammatical canons, which give us a sense of the way in which words ordinarily are used. But there are also some recognized canons of construction that are substantive in nature and represent policy choices in statutory interpretation. One of them, the rule of lenity, is clearly at issue in Coman's case.

Under the rule of lenity, penal statutes are narrowly construed in favor of the defendant, including laws establishing criminal liability. This is done in part because citizens should have fair notice

in the statute of conduct that is criminal. See *State v. Zeit*, 39 Kan. App. 2d 364, 368, 180 P.3d 1068 (2008). It also serves to make sure that it is the legislature—not the judiciary—that determines the reach of the criminal law. When there is some reasonable doubt about the meaning of a criminal statute, a narrow interpretation makes sure that the courts don't criminalize conduct the legislature didn't intend to make criminal, while leaving the legislature free to amend the statute to clarify its position and to provide notice to future actors that certain conduct is illegal. Jellum, Mastering Statutory Interpretation 238 (2008).

Failing to register under the Kansas Offender Registration Act is a felony, so the rule of lenity certainly applies when interpreting this statute. *State v. Reese*, 42 Kan. App. 2d 388, 390, 212 P.3d 260, 262 (2009). As typically stated by the Kansas Supreme Court, the rule of lenity provides that when there's reasonable doubt about the meaning of a statute, we adopt the interpretation that favors the defendant: "Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute." *State v. Paul*, 285 Kan. 658, Syl. ¶ 5, 175 P.3d 840 (2008).

To be sure, to apply the rule of lenity, our doubt about the meaning of the statute must be a reasonable one. Thus, the rule of lenity may not be applied if the resulting interpretation would not be "reasonable and sensible to effect legislative design and intent." *Paul*, 285 Kan. 658, Syl. ¶ 5.

The rule of lenity seems squarely applicable to the question in Coman's case. Having expressly included only two of the three subsections in the sodomy statute, surely there's at least some reasonable doubt about whether the legislature intended to include the excluded subsection. There are substantial differences between the excluded subsection and those that were included: violation of the excluded subsection is a nonperson misdemeanor, while violation of the included subsections is a serious felony. And the 1993 legislature apparently sought to include only felony offenses in the list found in K.S.A. 22-4902(c), which paralleled the list in S.B. 170 found in K.S.A. 22-3717.

The majority opinion works hard to avoid the rule of lenity by writing a new limit to its use that would in essence leave its appli-

cation doubtful in almost every case: "There is no cause to apply the rule of lenity where there is a reasonable and sensible judicial interpretation that effects legislative design." Contrary to the majority's statement, the rule of lenity applies when there is some reasonable doubt about meaning. In such situations, there generally are at least two reasonable interpretations, and the rule of lenity helps us choose one of them. Under the majority's view, if there is at least "a reasonable" interpretation "that effects legislative design," we can't apply the rule of lenity at all.

The only case in which we'd ever adopt an interpretation that *doesn't* further the apparent legislative design would be one in which the language was so clear that we simply found ourselves unable to extend that language to what we believe the legislature intended. That's not our case, and it's not the type of case in which the rule of lenity comes into play. The rule of lenity comes into play when there are at least two reasonable interpretations. And in such cases, as here, the rule of lenity should apply.

<u>Discussion and Conclusion.</u> In my view, most of the criteria we normally apply in interpreting a statute favor the defendant's position in this case. The text is not conclusive, particularly when we apply the standard grammatical canons of construction. The legislative choice *not* to include one subsection of the sodomy statute certainly was an intentional one that must have some meaning.

In deciphering that meaning, we must take ourselves back to 1993. At that time, states *were* allowed to criminalize consensual homosexual relations. The United States Supreme Court's decision in *Bowers v. Hardwick*, 478 U.S. 186, 196, 92 L. Ed. 2d 140, 106 S. Ct. 2841 (1986) (upholding Georgia sodomy law in case involving adult homosexual sexual relations), was only 7 years old, and it would not be overruled until 2003 in *Lawrence v. Texas*, 539 U.S. 558, 578, 156 L. Ed. 2d 508, 123 S. Ct. 2472 (2003).

Let's consider, then, what the majority's view would have meant prior to *Lawrence*: consensual gay sex between adults would violate the Kansas sodomy law but, *if sexually motivated*, would constitute a sexually *violent* offense requiring registration as a sex offender. That's not reasonable, and considering that possibility offers an-

other logical reason why the legislature chose to exclude K.S.A. 21-3505(a)(1) from registration requirements.

We should also consider what it means to apply the catch-all to a sex offense. Sex offenses are by definition sexually motivated. Unless there is some form of sodomy under K.S.A. 21-3505(a)(1) that would *not* be sexually motivated, what plausible reason for the legislature's exclusion of that subsection could there be than that the violation of that subsection doesn't trigger registration requirements?

One highly technical answer could be posited. K.S.A. 22-4902(c)(14) provides that an act is sexually motivated if it was "for the purpose of the defendant's sexual gratification." Some sex crimes, like aggravated incest, allow proof either of desire to meet the sexual gratification of the defendant or *another*. So, with respect to sodomy, maybe the legislature meant to include it only when the defendant wanted to gratify his own desires, not when there's only a desire to gratify the desires of another person. Technically such an argument could be made. See *State v. Allen*, 35 Kan. App. 2d 466, 473-74, 131 P.3d 1241 (2006). But it defies common sense, and it certainly has no application to our case, which involves Coman and a dog.

In my view, the legislature's decision to include two of three sections of the sodomy statute does indicate an intention to exclude the third section. And that exclusion cannot be overridden with a general catch-all provision. See *People v. Hayes*, 105 Cal. App. 4th 1287, 1291, 129 Cal. Rptr. 2d 885 (2003) (when statute requiring mental-health treatment applies only to defendants convicted of certain violent crimes that are intentional, catch-all provision for other offenses in which violence is used does not reach reckless conduct); *People v. Safotu*, 2005 WL 2741951, at *2 (Cal. App. 2005) (unpublished opinion) (same); *Gray v. Grand Trunk W.R. Co.*, 354 Mich. 1, 6-7, 91 N.W.2d 828 (1958) (where zoning provision prohibited 51 uses, but didn't list use as railway freight yard, catch-all provision for use that is noxious or hazardous based on odor, dust, fumes, noise, or vibration couldn't be used to prohibit freight yard); *Valenti Homes v. Sterling Heights*, 61 Mich. App. 537, 540-41, 233 N.W.2d 72 (1975) (where municipal ordinance

provides specific remedies for failure to install required sidewalks, catch-all provision for criminal penalties may not be used).

Coman's conduct was illegal, and he was sentenced to 6 months in jail, the maximum sentence for this offense. No matter our view of his conduct, I do not believe that the conduct was covered by the Kansas Offender Registration Act. I would reverse the district court's ruling to the contrary, and I therefore respectfully dissent.